## WELLS *a.* SMITH.

*New York Superior Court; Special Term, September,* 1858.

CONFLICTING CLAIMS BETWEEN CO-PLAINTIFFS OR CO-DEFENDANTS.

A stockholder whose scrip has been stolen may maintain against the corporation and a person who holds the stolen scrip, an action to establish his right to it.

The provision of section 274—that the judgment may determine the rights of the parties on each side between themselves—is to be taken in connection with that of section 118, that any person may be made a defendant who has, or claims, an interest in the controversy, adverse to the plaintiff, or who is a necessary party to a complete determination of the questions involved therein; and it is only in those cases and in the manner in which the conflicting claims of co-defendants could be settled in the action, according to the practice of the Court of Chancery, that they can be settled under the Code.

In what cases this can be done, considered.

Application for an injunction.

The action was against Wells, Fargo & Company, and one Smith, the holder of a certificate of certain stock in that company, of which plaintiff claimed to be the true owner.

HOFFMAN, J.—The case made is, that the plaintiff was owner of a certificate declaring him entitled to ten shares in the stock of the company, an organized association, and in some respects a corporation, under the name of Wells, Fargo & Co.; that such certificate, with a power in blank, was stolen from him; that the holder had obtained another upon surrender of that purloined from the company, which had come to the hands of the defendant Smith; that he was demanding the dividends, and threatened to sell his certificate. An injunction is sought against the company from allowing any further transfer, or from paying the dividends to Smith.

The complaint seeks to compel the company to replace the plaintiff on its books as a stockholder, to issue a fresh certificate to him, and pay him the dividends. Relief is sought against Smith, to compel him to surrender his certificate, and an injunction to restrain him from receiving the dividends; and also from further prosecuting an action which he has commenced in this court against the company.

1st. Smith, as assignee or holder of the stolen certificate and

power, has no demand which he can sustain in opposition to the plaintiff. He could acquire no better right than the thief possessed. The company, with knowledge of the facts, could not be compelled to recognize him as a stockholder. Perhaps the plaintiff could compel the surrender of the stolen certificate. (New Haven R. R. Co. *a.* Schuyler and 324 defendants, Court of Appeals, 7 *Abbotts' Pr. R.*, 41.) I do not see at present an objection to the action being against Smith and the company, to attain all the relief sought. I apprehend, that under the principles of the case referred to, and other authorities, the holders of the genuine stock of the New Haven Company, or some on behalf of all, could have sued the directors, with the alleged holders of fictitious stock, and attained the same object.

Therefore, the injunction as absolutely granted, seems to me right, the theory of the case being, that the plaintiff and Smith equally claimed the right to the particular stock.

2d. But Smith brought an action against the company before the present suit was commenced. And there is an order to show cause now before me, why he should not be restrained from prosecuting this action. Although his complaint is strictly framed upon the ground of an actual and exclusive ownership of the identical stock in question; yet he may, perhaps, make a case under it of a claim upon the company by reason of a representation of the validity of the certificate, upon the faith of which he paid his money, when he exhibited the new certificate. Now a claim of this nature is perfectly consistent with the establishment of the plaintiff's claim to have the stock replaced. It will subject the company to a loss in damages, and I assume that the corporation may make itself so responsible. (Davis *a.* The Bank of England, 4 *Bing.*, 383.) Whether what is sworn to have taken place here will suffice, is another question.

It is strenuously pressed by the plaintiff's counsel, that perfect relief can be given to all parties, and every claim adjudicated under section 274 of the Code in his action, and that the defendant Smith ought to be compelled to litigate in this suit. The counsel of the company unites in this view.

The clause of section 274 referred to is, that the judgment may determine the ultimate rights of the parties on each side, as between themselves.

It should be read in connection with section 118, providing that any person may be made a defendant who has or claims an interest in the controversy, adverse to the plaintiff; or who is a necessary party to a complete determination or settlement of the questions involved therein.

Both these provisions are taken from the practice in chancery, and intended, I think, to adopt and be governed by its rules. But it will be found, I think, that it is by no means a necessary conclusion, that because parties are properly made defendants, a judgment between themselves may be had.

The clause of section 274 in question has not, that I am aware of, received any explicit and authoritative construction.

The remarks of Justice Harris in Norbury *a.* Seely (4 *How. Pr. R.*, 73), of Justice Mitchell in The Savings Institute *a.* Roberts (1 *Abbotts' Pr. R.*, 382), and of Justice Woodruff in Tracey *a.* The Faucet Steam Company (1 *E. D. Smith,* 349), deserve much attention. The impressions of these learned judges appear to be, that the Code meant to adopt, and has done no more than adopt, the practice of a Court of Chancery, of settling the conflicting claims of co-defendants in certain cases.

It appears to me that this is the true construction of the provision; and we shall then have some definite rule to guide the court, and shall avoid many difficulties, which have been noticed in the opinions I have referred to.

Some leading authorities in the Court of Chancery may therefore be pertinently and usefully referred to.

Charnley *a.* Dunsaney, Latouche, and others, before Lord Redesdale, and on appeal before the House of Lords, is a leading case. (1 *Sch. & Lef.*, 137; 2 *Ib.*, 710.) Lord Redesdale there said: "It seems strange to object to a decree because it is between co-defendants, when it is grounded upon evidence between plaintiff and defendants. It is a jurisdiction long settled." Lord Eldon observed: "Where a case is made out between defendants, by evidence arising upon pleadings and proofs between the plaintiff and defendants, a court of equity is entitled to make a decree between the defendants. It is, indeed, bound to do so. The defendant chargeable has a right to insist that he shall not be liable to be made a defendant in another suit

for the same matter that may be then decided between him and his co-defendant; and the co-defendant may insist that he shall not be obliged to institute another suit for a matter which may then be adjusted."

In Bolton *a.* Lloyd (1 *Molloy*, 30), it appears to have been held, that an elegit creditor in possession of premises upon which the plaintiff had established a charge by will, might be decreed to account for rents he had permitted another defendant to receive; and might have a decree for that amount against such defendant.

Here the plaintiff could have the decree, and the elegit creditor was merely subrogated.

In Coote *a.* Lowe (cited 1 *Molloy*, 31, note), Lord Manners said, that "to give relief in favor of one defendant against another, it must appear clear, upon the pleadings and proofs, that neither of the defendants can bring forward any new fact or right."

In Eccleston *a.* Schennesdale (1 *Beavan*, 397), an account between co-defendants was refused, because, though a case was made in the plaintiff's favor against one defendant, it was not made against him in favor of the other seeking the decree. It came up on bill and answers, without proof. Some defendants were trustees, and on appeal, it had been held that the estate in question did not belong to the plaintiff, but to the other defendant. No case was made against the trustees in his favor, because their answer, available to the plaintiff, was not so to the co-defendant.

The principle of Charnley *a.* Dunsaney was recognized in Shannon *a.* Marselis (*Saxton's N. J. R.*, 424). In adjusting the rights of various mortgagees and purchasers to premises, one defendant insisted that a large deduction should be made from a mortgage held by another. The pleadings between themselves raised the question, and proofs had been taken upon it.

Chancellor Walworth, in Elliott *a.* Pell, recognizes the rule of Charnley *a.* Dunsaney (1 *Paige*, 268). See also Conrey *a.* Caulfield (2 *Ball & Beatty*, 271).

I deduce from these authorities—*First*. That it is only upon the hearing, when the pleadings had been all sifted and settled, and the testimony all produced, that the Court of Chancery administered this equity. The whole case being before it, and all

the parties heard, it could see clearly what law and equity demanded between them all.

*Next.* That it was only in cases where the defendant sought to be decreed against, had contested the point, or had been apprised that it was a subject of contestation between his co-defendant and himself, that such a decree would be made.

It is clear, that within these principles, and section 174 of the Code expounded by them, the present application cannot be sustained. The objection remains also in full force, that the plaintiff here can dismiss this suit whenever he chooses, before judgment.

There are cases in which a party is prosecuting an action which involves the same questions as he himself has presented, or submitted to have presented, in another suit. In such instances he may be restrained or compelled to an election at a proper period, and under proper circumstances. Such cases are alluded to in Fuller *a.* Read (6 *Duer*, 697; 15 *How. Pr. R.*, 231). The present is not one of that class.

Motion for injunction to restrain the action of Smith denied. The attorney will submit an order upon the whole subject for settlement upon two days' notice. The injunction is continued till further order.

---

## WARWICK *a.* THE MAYOR, &c., OF NEW YORK.

*Supreme Court, First District; General Term, October, 1858.*

### Pre-emptive Right.—Pleading.—Parties.

Under the statute of 1837, establishing the Thirteenth Avenue in the city of New York, and vesting the mayor, &c., of the city with all the right and title of the people of the State to certain lands under water, extending from the westerly side of land under water formerly granted to the mayor, &c., the 4th section of which statute provided that the proprietors of all grants of land under water theretofore made by the mayor, &c., should have a pre-emptive right in all grants to be made by the mayor, &c., of lands under water granted by the act, adjacent to and in front of the lands so theretofore granted;—the pre-emptive right is not a personal independent right of the grantee of previously granted adjacent premises, capable of separate independent conveyance, nor strictly an incident of the premises, but an incident of the plaintiff's estate in the previously