CHESTER COUNTY GUARANTEE & SAFE DEPOSIT CO. et al. v. SECURITIES CO. et al. (TOLAND et al., Interveners). (No. 6370.)

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. BONDS (§ 102*)—NEGOTIABILITY—TRANSFERS—VALIDITY.

 An owner of bonds which have been stolen, and transferred by the thief by means of a forged indorsement, may reclaim them in the hands of the transferee, though new securities have been issued to him in his own name in place of the stolen bonds.

 [Ed. Note.—For other cases, see Bonds, Cent. Dig. § 110; Dec. Dig. § 102.*]

2. BONDS (§ 102*)—NEGOTIABILITY—TRANSFERS—VALIDITY.

 Where bonds, nonnegotiable and transferable only by indorsement, duly authenticated, on surrender to the corporation, were stolen from the registered owners, designated as executors, and the thief forged an indorsement thereon, which the corporation accepted, persons deriving title through the larceny and forgery must account to the owners, though they acted in good faith, and though new bonds were issued in place of the stolen ones.

 [Ed. Note.—For other cases, see Bonds, Cent. Dig. § 110; Dec. Dig. § 102.*]

3. BONDS (§ 102*)—NEGOTIABILITY—TRANSFERS—VALIDITY.

 Where bonds, nonnegotiable and transferable only by indorsement, duly authenticated, on surrender to the corporation, were owned by executors as registered owners, and the bonds were stolen, and the corporation transferred them on a forged indorsement, by the thief indorsing the name of one of the executors individually by means of a rubber stamp, the corporation was negligent, and liable to persons receiving the bonds in good faith, and required to account to the executors therefor.

 [Ed. Note.—For other cases, see Bonds, Cent. Dig. § 110; Dec. Dig. § 102.*]

4. GUARANTY (§ 36*)—TRANSFER OF BONDS—FORGED INDORSEMENT—GUARANTY OF GENUINENESS—LIABILITY OF STOCKBROKERS.

 Where a corporation negligently issued bonds in lieu of bonds stolen from the registered owner, on which the thief forged indorsements, and indorsements were also forged on the new bonds, stockbrokers, ignorant of either forgery, guaranteeing in good faith the genuineness of the indorsements on the new bonds were not liable to the corporation, or to subsequent holders required to account to the registered owner therefor.

 [Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 38-45; Dec. Dig. § 36.*]

 Ingraham, P. J., and Laughlin, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by the Chester County Guarantee & Safe Deposit Company and another, as executors of Ann W. Roberts, deceased, against the Securities Company and another, in which Edward D. Toland and others intervene. From a judgment for plaintiffs, and adjudging the rights of defendants as between themselves, the Securities Company and the Equitable Securities Company appeal. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Carl M. Owen, of New York City, for appellants.

Marvin W. Wynne, of New York City, for respondents.

Yorke Allen, of New York City, and Reynolds D. Brown, of Philadelphia, Pa., for interveners.

McLAUGHLIN, J. The plaintiffs, as executors of the estate of Ann W. Roberts, deceased, were, prior to March 28, 1908, the registered owners and holders of $25,400 consols, hereafter called bonds, of the defendant Securities Company. These bonds were nonnegotiable, and transferable only by indorsement, duly authenticated, upon surrender to the company. They were kept by the plaintiffs in a tin box in a vault of the First National Bank of West Chester, Pa. On or about the date named, Gibbons G. Cornwell, a son of the plaintiff R. T. Cornwell, in some way not clearly explained in the record, gained access to the vault, broke open the box, and stole $23,000 of the bonds. He then forged the names of the executors to the blank form of assignment for transfer on the back of each bond. The signature of his father was affixed by the use of a rubber stamp, and that of the Chester County Guarantee & Safe Deposit Company by a rubber stamp, and forging with a pen the name of B. S. Walton, its president. The corporate seal of the company was affixed to the assignment, and Gibbons G. Cornwell attached to each his false certificate of acknowledgment as notary public, certifying that R. T. Cornwell, individually, and B. S. Walton, in his capacity as president, had personally appeared before him and duly acknowledged their respective signatures. Thereafter he obtained and attached to one of the bonds a genuine certificate of the county prothonotary, certifying his authority to take acknowledgments. He then mailed the bonds to the defendant Securities Company with a letter written by him on the stationery of Cornwell & Cornwell, the law firm in which he and his father were partners, requesting that the bonds be transferred to the name of his father. The Securities Company, notwithstanding the fact that it noticed the signature of R. T. Cornwell had been made with a rubber stamp, and that the transfer was to be made to one of the executors individually, made no investigation, but did as requested, and mailed the 23 new bonds in a letter addressed to Cornwell & Cornwell. The letter was opened by Gibbons G. Cornwell, who forged the name of his father to the indorsement on each of the new bonds and deposited them with Jamison Bros. & Co., brokers, as security for a speculative account carried by that firm for him. On the same day Jamison Bros. & Co. indorsed a guaranty of the genuineness of the signature of R. T. Cornwell on the back of

each bond and repledged them with Edward D. Toland, one of the interveners in this action. The bonds subsequently passed through the hands of other brokers, who have intervened in the action, each time the signature being guaranteed, and in June, 1911, were purchased by the defendant Equitable Securities Company. The transfer of the bonds by Jamison Bros. & Co., and all subsequent transfers, were made in good faith and without any knowledge of the forgery of the signature of R. T. Cornwell. The Equitable Securities Company, after it obtained the bonds, presented them to the Securities Company and had them transferred and new bonds issued to it in their place.

The loss of the original bonds was not discovered by the plaintiffs until the early part of August, 1912, when notice was at once given to the appellants, and a demand made that they deliver to the plaintiffs bonds of the same kind and issue, and of the same face amount, as originally issued to them, or that the plaintiffs be paid the value of the same. They neglected and refused to comply with demand, and thereupon this action was brought to procure a judgment decreeing that the plaintiffs were the owners and entitled to the immediate possession of the bonds issued by the Securities Company to the Equitable Securities Company, that the latter company be directed to deliver such bonds to the plaintiffs, properly indorsed, that the Securities Company be directed to transfer the same to the plaintiffs, and that an accounting be had for the interest paid on said bonds from March 1, 1912. The appellants separately answered, and put in issue the material allegations of the complaint upon which a recovery was asked. The Securities Company asked that the complaint be dismissed, and, in case judgment were recovered by the plaintiffs against it, that it have judgment against the Equitable Securities Company, indemnifying it against any damage it might sustain by reason thereof, and against the interveners to the extent of $18,000. The Equitable Securities Company asked that the complaint be dismissed, and, in the event that the plaintiffs have a judgment against it for the cancellation of the bonds in its possession, that it have judgment against the Securities Company for the amount of its loss, and against the interveners to the extent of $18,000—that being the amount of bonds received from them. The interveners jointly answered, and asked that the complaint be dismissed, and in case judgment were rendered in favor of the plaintiffs against the Equitable Securities Company, directing the surrender and cancellation of the bonds held by it, that then judgment be awarded against the Securities Company in favor of the Equitable Securities Company for the amount of the damages which it might sustain by reason of such surrender.

At the conclusion of the trial the court rendered a judgment to the effect that the plaintiffs, as executors and trustees of the Roberts' estate, were entitled to the possession of $23,000 of bonds issued by the Securities Company; that the Equitable Securities Company held $23,000 of bonds as trustee for the benefit of the plaintiffs, which it was directed to deliver to them, properly indorsed, for immediate transfer on the books of the Securities Company; that the Securities Company was directed to cancel the bonds issued to the Equitable Securities Company, and in place thereof issue to the plaintiffs 23 new bonds, of the face val-

ue of $1,000 each, registering the same in the names of the plaintiff; and that plaintiffs have judgment against both the Securities and Equitable Companies for $1,840, being the accrued interest on the $23,000 of bonds from March 1, 1912. The judgment also directed that the claims of the appellants against the interveners be dismissed on the merits. It is from this judgment that the appeal is taken.

Three questions are presented by the appeal: (a) The right of the plaintiffs to recover the bonds from the Equitable Securities Company; (b) the liability of the Securities Company; and (c) the liability of the Equitable Company and the interveners.

[1, 2] I am of the opinion that the judgment, in so far as it directs the Equitable Securities Company to deliver to the plaintiff the bonds held by it, properly indorsed, and to pay the interest thereon from March, 1912, is right, and should be affirmed. The principal relief sought by the plaintiffs is the recovery of the bonds themselves from the Equitable Securities Company and their registration by the Securities Company in the names of the plaintiffs.

It is strenuously urged by the interveners, on behalf of themselves and the Equitable Securities Company, that the plaintiffs have no right to these bonds, that their rights attached only to the bonds originally issued to them, and that they acquired no interest whatever in the bonds issued in their place in the name of R. T. Cornwell, subsequently transferred in the name of the Equitable Securities Company. I am unable to find any authority to support this contention. As I understand it, the owner of securities which have been stolen and transferred by means of forged indorsements may reclaim them in the hands of the transferee, and this even though new securities have been issued to the transferee in his own name, in place of the stolen ones. Clarkson Home v. Missouri, Kansas & Texas Ry. Co., 182 N. Y. 47, 74 N. E. 571; Comstock v. Buchanan, 57 Barb. 146; Cottam v. Eastern Counties Ry. Co., 3 L. T. 465; Johnston v. Renton, L. R. 9 Eq. 181; 26 Am. & Eng. Enc. of Law (2d Ed.) 889; Cook on Corporations (2d Ed.) § 366.

If the theft and forgery had been discovered while the bonds were in the hands of Gibbons G. Cornwell, I take it no one would doubt but what they could be recovered from him by the plaintiffs. The Equitable Securities Company and the interveners derived their title through his theft and forgery, and, this being so, they took the bonds with the same infirmities in title to which they were subject in his hands. The subsequent surrender of the bonds by the Equitable Securities Company and the registration and issue of new bonds in its name did not better its position. The trust in favor of the plaintiffs was impressed upon the new bonds, as it had been upon the old, because the new bonds simply took the place of the old. The right of the plaintiffs to secure the delivery of these bonds either to themselves or to the Securities Company for cancellation is sustained by the authorities cited. The bonds issued to the plaintiffs had been registered by the Securities Company in their name, and by reason thereof the Securities Company, in legal effect, agreed not to transfer them or change such registration, except at their direction. It undertook to

pay the interest and principal only to such registered owners. One of the purposes of registration was to guard the owners against loss resulting from larceny. Being registered, they were nonnegotiable, and could not be sold, except by direction of the registered owners, in whose hands alone they were of value. The bonds having been stolen from the plaintiffs, they had a right to follow them, or the proceeds derived therefrom, and recover the same, wherever found. If they could not be found, they had the right to recover their value from those who had been instrumental in changing them from registered to negotiable bonds. Pollock v. National Bank, 7 N. Y. 274, 57 Am. Dec. 520; Clarkson Home v. Missouri, Kansas & Texas Ry. Co., supra; Knox v. Eden Musee Am. Co., 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700.

The Equitable Company having received the interest upon the bonds since March 1, 1912, judgment was also properly directed against it and the Securities Company for that amount.

[3] The trial court found that the Securities Company was grossly negligent in making a transfer from the plaintiffs to R. T. Cornwell. His name was indorsed upon each bond by a rubber stamp. This, in and of itself, was so unusual that every precaution ought to have been taken to determine that the use of such stamp was authorized. But no precaution whatever seems to have been taken; the Securities Company relying solely upon the assurances of the thief, who requested the transfer to be made, that R. T. Cornwell usually signed his name in that way. Not only this, but the transfer of the bonds from the plaintiffs as executors of the Roberts' estate to R. T. Cornwell was a transfer from one of the executors to himself individually. This, also, should have been sufficient notice to require the Securities Company to ascertain, before making the transfer, that the proper persons had directed it. Cooper v. Illinois Central R. R. Co., 38 App. Div. 22, 57 N. Y. Supp. 925. Had the Securities Company made the slightest investigation at this time, it would have ascertained that the request was unauthorized and the bonds had been stolen. Its failure and neglect in this respect was the primary and proximate cause of the loss, which now must be borne by the Securities Company, the Equitable Company, or the interveners. Under such circumstances, it seems to me the loss should be borne by the Securities Company, and this under the well-recognized rule in equity that, whenever one of two innocent persons must suffer by the act of a third, he who has made the loss possible must sustain it. Hertell v. Bogert, 9 Paige, 52; Follett Wool Co. v. Utica Trust & Deposit Co., 84 App. Div. 151, 82 N. Y. Supp. 597; Downey v. Finucane, 146 App. Div. 209, 130 N. Y. Supp. 988, affirmed 205 N. Y. 251, 98 N. E. 391, 40 L. R. A. (N. S.) 307; Brown v. Howard Fire Ins. Co., 42 Md. 384, 20 Am. Rep. 90. All the parties, as above indicated, acted in entire good faith; but the fact cannot be overlooked that it was the omission on the part of the Securities Company to properly perform its duty which enabled the thief to make any use whatever of the bonds. Had the Securities Company made the proper investigation, it would have refused to transfer the bonds, and in that case the title still would be in the plaintiffs, and a loss would not have been sustained.

[4] I think, therefore, that the court was right in holding that the interveners were not liable to either company; but I think it erred in not giving the Equitable Company a judgment against the Securities Company for the value of the bonds directed to be surrendered to the plaintiffs.

The decision and judgment appealed from, therefore, should be modified to this extent, and, as thus modified, the judgment should be affirmed, with costs to the plaintiffs.

CLARKE and SCOTT, JJ., concur.

INGRAHAM, P. J. (dissenting). The essential facts upon which this judgment was entered are as follows: The defendant, the Securities Company, a domestic corporation, issued in the year 1899 certain certificates of indebtedness, known as consols, and such obligations, of the face value of $23,800, were held by the plaintiffs as executors under the will of one Ann W. Roberts, deceased. These certificates of indebtedness were payable to the order of the plaintiffs as such executors as aforesaid, and were transferable only by indorsement and on surrender thereof to the said Securities Company, at its office or agency; that on or about March 28, 1908, one Gibbons Gray Cornwell forged the name of the plaintiffs to an indorsement upon said certificates for transfer, and presented the same to the Securities Company, which canceled such certificates and issued new certificates in the name of R. T. Cornwell individually, who was one of the plaintiffs and one of the executors and trustees of the Ann W. Roberts estate; that thereafter the said Gibbons Gray Cornwell obtained possession of the said certificates issued in the name of R. T. Cornwell, and forged the signature of the said R. T. Cornwell to the form of indorsement on the back of each of said certificates, and on or about April 7, 1908, pledged the said certificates with the forged indorsements with a firm of stockbrokers in the city of Philadephia as collateral for a speculative account which said Gibbons Gray Cornwell had with the said brokers; that the said brokers delivered the said certificates of indebtedness to one Toland, who on or about June 1, 1911, sold $18,000 par value of the said certificates of indebtedness, and the same were purchased by the Equitable Securities Company; that the remaining $5,000 of the said certificates of indebtedness were subsequently sold by the brokers with whom they had been pledged, and were also purchased by the Equitable Securities Company, who presented the same to the defendant the Securities Company, which received and canceled the same and issued new certificates of indebtedness for the full amount of $23,000 to the defendant the Equitable Securities Company, which company at the time of the trial held the same as its property.

There is no substantial question as to the forgery of the name of the plaintiffs as executors, etc., and also of the forgery of the name of R. T. Cornwell after new certificates had been issued and registered in his name, and there can be no doubt but that the plaintiffs were entitled to a judgment against the Securities Company, canceling the transfer of these certificates of indebtedness and requiring the

defendant the Securities Company to issue new certificates of indebtedness to the plaintiff and to pay to the plaintiffs the accrued interest thereon. The court also found, and this finding was amply sustained by the evidence, that neither of the plaintiffs have at any time ratified, confirmed, or validated the transfer of the said consols, so negligently made by the Securities Company, out of the names of the plaintiffs as executors as aforesaid, or the transfer of the said consols out of the name of R. T. Cornwell and into the name of the Equitable Securities Company, as aforesaid, or the sale of the said consols to the said last-named company.

Upon these facts the court below directed judgment by which it was adjudged that the plaintiffs, as the executors of Ann W. Roberts, deceased, are entitled to the immediate possession of $23,000, face amount, of consols issued by the defendant the Securities Company, and registered in the name of the plaintiffs as such executors on the books of the said company on March 27, 1900, which consols are in the possession of the defendant the Equitable Securities Company, and requiring the defendant the Securities Company, to issue 23 new consols, of the face value of $1,000 each, respectively, and to register said consols on their books in the name of the plaintiffs, as executors of the estate of Ann W. Roberts, deceased, and to deliver said 23 certificates, so registered, to the plaintiffs herein; and that the plaintiff have judgment for $1,840, being the accrued interest on the said $23,000, face amount, of the consols from and after March 1, 1912. And so far as the plaintiffs are concerned that is all the relief to which they are entitled.

The transfers of these certificates on the books of the defendant the Securities Company, being based upon the forged indorsements of the plaintiffs' name as trustees, conveyed no title to the transferees, including the Equitable Securities Company, and on demand the plaintiffs were entitled to have transferred to them new certificates of indebtedness, certifying that they were the holders of $23,000 of these certificates of indebtedness. The Equitable Securities Company, however, to whom had been transferred these certificates, having been made a party defendant to the action, and, subsequent to the institution of the action, certain persons, by and through whom these securities had been transferred by the brokers to whom the forger had pledged these securities as collateral security for his indebtdness, had been allowed to intervene in the case as defendants, had interposed answers, and were authorized by the order allowing them to intervene to answer the complaint, and raise such issues, set up such new matter, and demand such judgment, both in defense against the complainants and also as to the ultimate liability, if any, as between the defendant the Securities Company, and the defendant the Equitable Securities Company as may be right and proper in the premises. The answer interposed by these interveners asked for judgment, either dismissing the complaint, or, if the court held that the plaintiffs were entitled to such certificates of indebtedness, that the act of issuing new securities on the part of the defendant the Securities Company caused no damage whatever either to the plaintiffs or to the defendant the Securities Company; that if the judgment of the court should be that

because of any invalidity in the issue of said consols in the name of R. T. Cornwell the consols subsequently issued to and now held by the defendant Equitable Securities Company should be surrendered or canceled for the benefit of the plaintiffs, or that defendant Equitable Securities Company pay to the plaintiffs any sum of money by reason of such invalidity, that then a cross-judgment be awarded to the defendant Equitable Securities Company, to the effect that the defendant the Securities Company should reimburse said defendant in full therefor; and for such other and further relief as may be just in the premises. It does not appear by the record that the answer of these interveners was served upon either of the original defendants; but no objection was taken to the court's granting such relief to each of the defendants in the court below, and it was therefore waived.

The defendant the Equitable Securities Company also interposed an answer, alleging that it bought the $23,000 of bonds for full value and without notice of any of the matters alleged in the complaint; that this defendant the Equitable Securities Company, after purchasing the certificates of indebtedness, surrendered the same to the Securities Company, which issued new certificates of indebtedness in the name of the Equitable Securities Company, and since such surrender the Securities Company had paid to the Equitable Securities Company the interest due on said certificates of indebtedness; and the defendant the Equitable Securities Company demanded judgment dismissing the complaint, and that, in case there should be a judgment resulting in the cancellation of the certificates of indebtedness issued to the Equitable Securities Company by the Securities Company, the Equitable Securities Company demanded judgment against its codefendant the Securities Company for the amount of the loss or damage that it may have suffered thereby; and the defendant Equitable Securities Company further demanded judgment against the interveners to indemnify and hold harmless the defendant on account of any judgment that may be obtained against it by reason of the acquisition or possession of $18,000, the principal amount of the certificates of indebtedness of the Securities Company, acquired by them from Taylor, Smith & Evans.

It seems to me that, the plaintiffs' demand having been satisfied by the judgment requiring the Securities Company to issue to them certificates of indebtedness to the amount owned by them, the ownership of which the fraudulent transfer had never divested, and the plaintiffs having obtained the judgment to which they were entitled, the only question remaining is the judgment these defendants were entitled to as between themselves upon the facts found by the court or proved upon the trial. The parties being all before the court, the court has power to make such judgment as under the pleadings either party was entitled to. The Securities Company had been induced to issue to the Equitable Securities Company certificates of indebtedness to which it was not entitled, and I think the court had power to adjudge that these certificates were unlawfully issued and that they should be delivered up and canceled. There being no estoppel, the Securities Company was not bound to repay to the Equitable Securi-

ties Company the amount of money which it had paid to purchase these securities, as the Equitable Securities Company never acquired any title thereto or right to have the same transferred to it. The whole loss of these parties has been caused by the illegal transfer of the securities by the Securities Company, and, such transfer having been at the request of and for the benefit of the Equitable Securities Company, it seems to me that the Equitable Securities Company cannot require repayment from the Securities Company for any loss sustained by it by reason of its purchasing these securities, as the indorsement of Cornwell was forged.

There is no question of estoppel presented, as I read the testimony, because the purchase by the Equitable Securities Company of these securities was not based upon any representations or acts of the defendant the Securities Company as to the validity of these indorsements or the right of the transferrors of the certificates of indebtedness to the Equitable Securities Company to make such transfer. But as between the Equitable Securities Company and the interveners I think that company was entitled to judgment against the interveners to recover back the money that it had paid to them for the securities that it had purchased from them. These interveners had sold to the Equitable Securities Company certificates of indebtedness, which upon their face bore the indorsement of the person in whose name the securities were registered. Of course, the right to those securities depended upon the genuineness of the signature to the transfer upon the back of the certificates of indebtedness. I think that if R. T. Cornwell, in whose name the certificates then stood, had actually signed the transfer of these certificates of indebtedness, as between the interveners and the Equitable Securities Company, the latter would have been entitled to no judgment against the interveners. But the signature of the said R. T. Cornwell was forged, and the delivery of the original certificates with this forged indorsement transferred nothing to the Equitable Securities Company, and, the Securities Company being entitled to have those securities canceled, I think the Equitable Securities Company had the right to have a judgment against the persons who had sold and delivered the said certificates of indebtedness, with said forged indorsement, for the amount that it had paid to them therefor, with interest from the date of such payment.

Stress is laid by my Brother McLAUGHLIN in his opinion upon the finding of the trial court that the Securities Company had been grossly negligent in making the transfer from the plaintiff to R. T. Cornwell, and that by reason of this negligence the Equitable Securities Company is entitled to a judgment against the Securities Company for the amount that it paid for these certificates of indebtedness. I cannot see, however, that this negligence was in any way the proximate cause of any injury that was sustained by the Equitable Securities Company. A different question would be presented if R. T. Cornwell had actually signed the transfer of the certificates standing in his name. Undoubtedly the Securities Company, by transferring the certificates from the name of the plaintiffs, as executors, to R. T. Cornwell individually, had certified that R. T. Cornwell was the

owner of those certificates, and if R. T. Cornwell had sold them either to the Equitable Securities Company or to the Equitable Securities Company's transferrors, undoubtedly, as between the Equitable Securities Company and the Securities Company, the Securities Company would have been entitled to recover the amount paid, relying upon the certificates standing in the name of Cornwell. But R. T. Cornwell never signed the transfer, and assuming that the Securities Company was estopped from denying to a bona fide purchaser for value that these certificates of indebtedness did stand in the name of R. T. Cornwell, and that he had a right to sell or transfer them, R. T. Cornwell has never attempted to sell, or transfer them. Whether these certificates of indebtedness stood in the name of the plaintiffs, as trustees, or of R. T. Cornwell, who was one of the trustees, individually, in either case they were part of the trust estate, and the mere fact that the certificates were negligently or unlawfully transferred from the name of the trustees as trustees, or to the name of one of the trustees individually, made no difference as to the right of either the defendants or the interveners in transferring the certificates. Nothing that the Securities Company did, that I can see, estopped from claiming, as against the Equitable Securities Company or the interveners, the fact that the transfer of these securities from R. T. Cornwell was a forgery. Neither the Equitable Securities Company nor the interveners relied upon any act of the Securities Company as to the right of R. T. Cornwell to transfer or as to the validity of the consent to transfer which purported to be signed by R. T. Cornwell.

As between these parties, their rights must depend upon the fact that R. T. Cornwell's name was forged to that instrument, and the Securities Company has a perfect right to say that when that forgery was discovered the purchase of the certificates, based upon the consent to transfer which purported to be signed by R. T. Cornwell, but which was a forgery, was invalid and conferred no title to the certificates. And it is this distinction, I think, which differentiates this case from the cases relied upon by my Brother McLAUGHLIN, especially the case of Jennie Clarkson Home v. Missouri, K. & T. R. Co., 182 N. Y. 47, 74 N. E. 571, 70 L. R. A. 787. In that case the court, in affirming the judgment, said:

"It was contended on behalf of the defendant Gibson that only an action for conversion could be maintained as against him. The bonds were traced into his hands, and he knew that they belonged to the plaintiff. If they remained in his hands, or if he had sold them and then recovered them back, the plaintiff had the right to maintain an action against him to recover them. But no question with reference to the form of the action appears to have been raised upon the trial. The defendants evidently tried all of the questions pertaining to their liability to the plaintiff and to each other without question as to form, and we think, therefore, it is now too late to raise such a question."

In this case the question as to the right of the defendants as between themselves was raised upon the trial. No question was made as to the failure of either of the defendants as to the service of the answer upon their codefendants, but the obligation of the interveners to either of the corporations, and the question as to the rights of the

corporations as between themselves, were distinctly raised, both in the answers and by the requests to find.

I think, therefore, the judgment should be modified, as above indicated, and, as thus modified, affirmed.

LAUGHLIN, J., concurs.