ALBERT E. RAND, Plaintiff, *v.* HERCULES POWDER COMPANY, INC., and Others, Defendants.

Supreme Court, New York County, June 27, 1927.

Corporations — stock — action to determine that plaintiff is owner of certain stock and to compel issuance of certificates to him — certificates of stock indorsed in blank were acquired from plaintiff by fraud, transferred on books of corporation to innocent purchasers for value, and new certificates issued to said purchasers — purchasers are entitled to retain stock as against plaintiff — corporation is Delaware corporation — Personal Property Law, art. 6, is not applicable.

Innocent purchasers for value of corporate stock, which was acquired from the original owner by fraud, transferred on the books of the corporation and new certificates issued to the purchasers, have title to the stock as against the original owner.

In this action to have determined that the plaintiff is the owner of certain corporate stock and that the corporation issue certificates therefor, in which it appears that the stock was acquired from the plaintiff by fraud and transferred to innocent purchasers for value, an injunction *pendente lite*, restraining the transfer by the innocent purchasers, will not be granted.

Article 6 of the Personal Property Law, relating to the transfer of corporate stock, is not applicable, since it appears that the corporation issuing the stock is a Delaware corporation, and that the statute, by force of sections 180 and 183 of the Personal Property Law, does not apply to certificates issued by a corporation resident of a State which does not have a similar law in effect. Delaware has not passed the Uniform Stock Transfer Act.

APPLICATION for an injunction *pendente lite* in an action to have it determined that plaintiff is the owner of certain corporate stock and that defendants be ordered to issue certificates therefor.

*Siegfried F. Hartman*, for the plaintiff, for the motion.

*White & Case [Joseph M. Hartfield* and *James Adam Murphy* of counsel], for the defendants Hercules Powder Company, Inc., and the New York Trust Company, opposed.

*Stuart McNamara [Raymond B. Seymour* and *Thomas E. Dewey* of counsel], for the defendants W. Winder Laird and others, opposed.

LEVY, J. On or about March 29, 1927, plaintiff was the owner and holder of record of 400 shares of preferred stock of defendant Hercules Powder Company, Inc., a Delaware corporation, whose transfer agent is the defendant, the New York Trust Company. Prior to that date plaintiff received a letter purporting to emanate from the Hercules company, and to be signed on its behalf by one A. M. Oliver as " assistant to president," stating that one G. A. Sprague, whose signature was affixed for the purpose of identification, would call upon plaintiff in relation to a matter of mutual interest to the latter and the company. A similar letter was received by plaintiff's wife, who was the owner and holder of record of 200 shares of preferred stock. On or about March twenty-ninth a person representing himself to be G. A. Sprague called upon plaintiff, stated that he was a representative of the company which was offering its preferred stockholders one and one-quarter shares of common stock for each share of preferred stock, and proceeded to point out the advantages of effecting the transfer. Plaintiff determined to accept the offer, and so did his wife. Sprague told plaintiff to forward the certificates indorsed in blank, with proper guarantees of the signatures, to " Hercules Powder Company, Inc., Wilmington, Delaware, Attention A. M. Oliver." Meanwhile he gave plaintiff what purported to be certificates of deposit of Hercules Powder Company, Inc., printed documents, with imitation lithograph borders, which acknowledged on behalf of the company the receipt of 400 and 200 shares respectively of preferred stock to be exchanged for common stock on the basis previously outlined. The plaintiff caused both his and his wife's certificates to be indorsed in blank and the signatures guaranteed by a reputable trust company, and sent the stock by registered mail to the " Hercules Powder Company, Inc., Wilmington, Delaware, Attention A. M. Oliver." He and his wife received letters two days later purporting to have been written by the company acknowledging receipt of the stock and stating that new common stock would be forwarded in a few days. About two weeks later

they again received letters from the same source informing them that 500 and 250 shares respectively of common stock were being forwarded to them under separate cover and asking that upon receipt thereof they return the certificates of deposit in their possession. Failing to receive the stock, plaintiff wrote to the company, only to be informed that it had nothing to do with the entire plan of exchange, that it had not received his or his wife's stock, that Sprague was unknown to it and that the whole proceeding was evidently " one of fraud and forgery." Investigation revealed that the certificates mailed by plaintiff had been stolen from the United States mail or even more likely from the very office of the company, that they had been presented to the latter through its transfer agent, indorsed to various members of the firm of P. C. Kullman & Co., and new certificates issued to said indorsees. It further developed that many of the certificates thus issued to the Kullmans had been again presented to the transfer agent, properly indorsed by the Kullmans, and transferred in the regular course of business, without knowledge on the part of the Hercules company or the transfer agent of any facts or circumstances indicating that the persons presenting the certificates were not entitled to a transfer. The firm of Laird, Bissell & Meeds, members of the New York Stock Exchange, between March thirty-first and April eighth, purchased 550 shares of preferred stock of the Hercules company at the market rate of $116 to $116.50 per share, the certificates being registered in the name of various members of the firm of P. C. Kullman & Co., and between April third and April seventh sold, and on April twelfth and April nineteenth transferred, 250 of the shares purchased. The remaining 300 shares are still in the possession of Laird, Bissell & Meeds and they demand the right to have these shares transferred on the books of the New York Trust Company and the Hercules company on the ground that they are innocent purchasers for value. The 250 shares which they sold, together with 50 other shares, are now owned and held by six different individuals, in quantities ranging from 3 to 100 shares respectively, and all of them appear to be *bona fide* purchasers for value.

In this action the plaintiff asks that it be adjudged that he is the sole and exclusive owner of 400 shares of preferred stock of the Hercules company and that the defendants be directed to issue to him certificates of stock evidencing ownership of said 400 shares. The present application is for a temporary injunction, restraining the corporate defendants, *pendente lite,* from transferring (1) any of the shares originally evidenced by the certificates held by plaintiff and (2) any certificates issued upon the surrender and cancellation of the original certificates or upon the surrender and cancellation

of any other certificates representing said shares. The motion is opposed not only by the Hercules Powder Company, Inc., and the New York Trust Company, but also by Laird, Bissell & Meeds, to whose intervention as party defendants plaintiff has consented upon condition that such consent should not be deemed an admission that they are necessary or proper parties.

If article 6 of the Personal Property Law of this State (as added by Laws of 1913, chap. 600), relating to transfers of corporate stock, were held applicable to the present situation, it would be clear that plaintiff has lost all right to his stock as against the intervening defendants by reason of the fact that it was stolen while indorsed in blank. The thief could convey a good title *to a bona fide purchaser for value.* (Pers. Prop. Law, §§ 166, 168; see note of Commissioners on Uniform State Laws to § 5 of the Uniform Stock Transfer Act, with which § 166 of the Personal Property Law is identical; cf. *Iowa Securities Corp.* v. *Ridgewood Nat. Bank,* 106 Misc. 335; *Nicholson* v. *Morgan,* 119 id. 309.) A difficulty is, however, presented by reason of the fact that the Hercules Powder Company, Inc., is a Delaware corporation. Section 183 of the Personal Property Law, dealing with " definitions," states that: " ' Certificate ' means a certificate of stock in a corporation organized under the laws of this state or of another state whose laws are consistent with this act," and that " ' shares ' means a share or shares of stock in a corporation organized under the laws of this state or of another state whose laws are consistent with this act." The notes of the Commissioners on Uniform State Laws to section 22 of the Uniform Stock Transfer Law, which is the prototype of section 183 of the Personal Property Law of this State, indicate that it was their intention that as to foreign corporations the act was to apply only to those organized in a State which had a like law governing the transfers of stock. This has been the interpretation placed upon the statute by the Massachusetts courts. (*Barstow* v. *City Trust Co.,* 216 Mass. 330; *Boston Safe Deposit & Trust Co.* v. *Adams,* 224 id. 442; *Casto* v. *Wrenn,* 255 id. 72.) These decisions are to be regarded as particularly persuasive in view of the fact that section 180 of the Personal Property Law provides that " This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." The complaint alleges, and it is nowhere denied, that the State of Delaware has no law parallel to article 6 of the Personal Property Law of the State of New York, and had no such law at any of the times mentioned in that pleading. It follows that the rights of the parties are not affected by our statute and are to be determined according to common-law principles.

It s unnecessary, however, for reasons which will later appear, to decide whether the common law of New York or of Delaware is controlling, and it is equally needless to determine whether or not plaintiff, under the governing law, would be entitled to reclaim the stolen certificates from innocent purchasers for value, or to compel the company and its transfer agent to recognize him as the stockholder. The circumstance which, in my opinion, is predominant here is the fact that the stolen certificates were replaced with the new ones issued by the company in proper form and now seemingly in the hands of innocent purchasers for value. The importance of this is apparent from the following statement of the law in Cook on Corporations (Vol. 2 [8th ed.], 1321): " Where certificates of stock indorsed in blank have been stolen, and the thief or his transferee has obtained a registry on the corporate books and obtained new certificates of stock, and these new certificates have been sold, the purchaser is protected in his possession of the stock."

The same author (at p. 1351) states that even where the owner's indorsement was forged and a transfer obtained, the *bona fide* purchaser of a new certificate issued in its place is entitled to retain the same. " It has already been shown that the transferees of a certificate of stock which has been put in circulation by forgery are not allowed to retain such stock where there has *not* been, at some time subsequently to the forgery, a transfer registered on the corporate books. It has also been shown that he who applies to the corporation for a registry of transfer, such registry being the first one since the forgery was committed, is not allowed to retain the stock. *An entirely different rule prevails as regards all subsequent bona fide holders of the new certificate obtained by the first registry. The person who obtains the first registry has no rights except as against his transferrer. But all subsequent purchasers without notice are fully protected. They cannot be compelled to give up the stock, either to the corporation or to the person who lost it by forgery. This rule arises, not from the law of negligence, but from the law of estoppel operating against the corporation. It is in accord with the demands of trade and the constant tendency of the law to protect bona fide purchasers of certificates of stock.*" (Italics mine.)

The rationale of the rule seems to be grounded in the notion that a purchaser of stock should be required to search in the company's books no farther back than the issuance of the certificate bought by him. Thus it is stated in the same work (at p. 1437): " This rule is peculiar to stock certificates, and cuts off rights even of a former owner who has been deprived of the stock by forgery. The person who obtains a registry first, after the illegal act has been done, is not protected by this rule. But his *bona fide*

purchaser of the new certificates and all subsequent purchasers are protected, and cannot be compelled to give up the stock to the prior owner who was deprived of it illegally." (To the same effect see 6 Fletcher Corp. 6469, 6470, 6472; 14 C. J. 774.)

However, an examination of the authorities cited in these various works in support of the proposition that a *bona fide* purchaser of a substituted certificate is protected in his possession, even though he would have had no right to retain the original certificate had there been no intermediate registry, discloses that the law is not nearly so well settled on the subject as the text-writers would make it appear. It would be impracticable to analyze here all the various cases cited in these treatises. Suffice it to say that although a number of them do state the law in accordance with the quotations set forth, such statements in many instances constitute nothing more than *obiter dicta*. Indeed, some permitted the purchaser of the substituted certificate to recover damages rather than stock, and others are easily distinguishable on other grounds and are, therefore, of doubtful weight.

Thus, in *Winter v. Montgomery Gas Light Co.* (89 Ala. 544) the purchaser of a new certificate was permitted to retain it because he had no knowledge of the fact that the sale of the original certificate constituted a breach of trust. The real basis of the decision — it was necessary to go no further — was that the equitable rights of the *cestui* were cut off by the sale to a *bona fide* purchaser for value, whereas in the instant case the title of the plaintiff was legal and not equitable. The holding in *Scarlett & Scarlett, Inc.,* v. *Ward* (52 N. J. Eq. 197, 210) was predicated upon the theory that the seller of the stock had the right to dispose of it. The decision in *Westinghouse* v. *German National Bank* (196 Penn. St. 249) could well be sustained even if a new certificate had not been issued, in view of the apparent authority vested in the sellers of the stock, to whom it had been indorsed, to dispose of it as their own. In *Chester County G. T. & S. D. Co.* v. *Securities Co.* (165 App. Div. 329; affd., 219 N. Y. 599) registered non-negotiable bonds were stolen and sold with forged indorsements to a *bona fide* purchaser for value who presented them for transfer and received new bonds in their place. The owner was nevertheless held entitled to recover the new bonds from their holder. It should be observed, however, that the latter was not a purchaser of the new bonds, but of bonds with forged indorsements, and it could not improve its position merely by presenting to the company bonds which it had no right to retain and procuring the issuance of new ones. In *Bank* v. *Lanier* (11 Wall. 369) the certificate was purchased from the record owner without knowledge that the latter, without surrendering the certificate, had caused the stock to be transferred on the company's

books to another. The purchasers sued for damages only, and their recovery throws no light whatever on the situation here presented. Nor can any aid be derived from *N. Y. & N. H. R. R. Co.* v. *Schuyler* (34 N. Y. 30), where stock spuriously and fraudulently issued in excess of the corporation's authorized capitalization was held void, and transfers by the record owner of properly issued stock were held valid, despite the fact that the certificates therefor were not surrendered, but remained outstanding in the hands of purchasers or pledgees who had neglected to cause the transfer to themselves to be registered on the company's books.

The doctrine that the purchaser of a certificate of stock need not look back of the last registry on the corporate books is not, however, without authority to support it. In *Pratt* v. *Taunton Copper Co.* and *Pratt* v. *Machinists' National Bank* (123 Mass. 110) certificates of stock in the respective corporate defendants belonging to a Mrs. Pratt were stolen, substituted certificates were issued on presentation of the stolen ones with a forged power of attorney, and the substituted certificates were sold to a *bona fide* purchaser for value. It was held that Mrs. Pratt was entitled to a new certificate from each corporation, since she could not be deprived of her stock by forgery. The court added, with reference to the *bona fide* purchaser (at p. 112): " His rights against the corporation depend upon the effect of this certificate, and the plaintiff is clearly entitled to no decree against him." In *Machinists' National Bank* v. *Field* (126 Mass. 345) the bank, which was one of the defendants in *Pratt* v. *Machinists' National Bank* (*supra*) and which by decree had there been directed to issue a new certificate to Mrs. Pratt, sued to compel Dean, the *bona fide* purchaser of the certificate issued in place of the stolen one, to return his shares. The court held (at p. 348) that although the issuance of this certificate had resulted in an overissue of stock: " Dean cannot be ordered to return his certificate, because he purchased the shares in good faith and for valuable consideration, and the certificate issued to him is as against the bank conclusive evidence of his title. The bank has no right to compel him rather than any other stockholder to give up his certificate and thereby assume the responsibility of its own illegal act in issuing a greater number of shares than the law authorized." The case of *Boston & Albany R. R. Co.* v. *Richardson* (135 Mass. 473) presents another phase of the litigation arising out of the theft of Mrs. Pratt's stock. (*Pratt* v. *Boston & Albany R. R. Co.*, 126 Mass. 443.) In holding that the plaintiff, which had been compelled to issue a certificate to Mrs. Pratt in place of the one stolen, could recover damages against the person who had presented the stolen certificate with a forged power of

attorney, the court said (at p. 474): " Upon these facts, it is clear that Mrs. Pratt never parted with her property in the shares, and therefore the plaintiff was obliged to procure five shares of its corporate stock, and issue a certificate to her, and also to pay her the dividends upon the five shares. *Pratt* v. *Taunton Copper Co.*, 123 Mass. 110, and cases cited. It is also settled that the corporation has no remedy against the person who purchased of the defendants, because, as to him, the corporation is estopped to deny its certificate issued to the defendants and transferred to the purchaser. *Machinists' National Bank* v. *Field, ubi supra*, and cases cited." The Massachusetts rule, therefore, seems to recognize both the original owner and the *bona fide* purchaser for value of the new certificate as stockholders of the corporation, even where the result would be an overissue of the company's stock.

However, in *Moores* v. *Citizens' National Bank of Piqua* (111 U. S. 156), the United States Supreme Court, in an opinion by Mr. Justice GRAY, *the very judge who, as chief justice of the Massachusetts court, had written for a unanimous court the opinions in Pratt v. Taunton Copper Co. and Machinists' National Bank v. Field*, said (at pp. 165, 166): " When a corporation, upon the delivery to it of a certificate of stock with a forged power of attorney purporting to be executed by the rightful owner, issues a new certificate to the present holder, who sells it in the market to one who pays value for it, with no knowledge or notice of the forgery, the corporation is doubtless not relieved from its obligation to the original owner, but must still recognize him as a stockholder, because he cannot be deprived of his property without any consent or negligence of his. *Midland Railway* v. *Taylor*, 8 H. L. Cas. 751; *Bank* v. *Lanier*, 11 Wall. 369; *Telegraph Company* v. *Davenport*, 97 U. S. 369; *Pratt* v. *Taunton Copper Company*, 123 Mass. 110; *Pratt* v. *Boston & Albany Railroad*, 126 Mass. 443. *And the corporation is obliged, if not to recognize the last purchaser as a stockholder also, at least to respond to him in damages for the value of the stock, because he has taken it for value without notice of any defect, and on the faith of the new certificate issued by the corporation. In re Bahia & San Francisco Railway*, L. R. 3 Q. B. 584." (Italics mine.)

Mr. Justice GRAY's failure to follow by utterance his own opinion in *Machinists' National Bank* v. *Field* (126 Mass. 345) or even to cite the case, might tend to weaken the force of the latter authority, although to be sure he took no precise position in the *Moores* case as to the extent of the rights of the *bona fide* purchaser of the new certificate, and obviously it was not necessary for the purposes of the decision that he do so.

Turning now to the law of England on the subject, we find it is not in an altogether satisfactory state. In *Davis* v. *Bank of*

*England* (2 Bing. 393 [1824]) the court said, by way of dictum, it is true (at pp. 407, 408): " If the bank should say ·to such subsequent purchasers, the persons of whom you bought were not legally possessed of the stocks they sold you, the answer would be, the bank, in the books which the law requires them to keep, and for the keeping which they receive a remuneration from the public, have registered these persons as the owners of these stocks, and the bank cannot be permitted to say that such persons were not the owners. If this be not the law, who will purchase stock, or who can be certain that the stock which he holds belongs to him? It has ever been an object of the Legislature to give facility to the transfer of shares in the public funds. This facility of transfer is one of the advantages belonging to this species of property, and this advantage would be entirely destroyed if a purchaser should be required to look to the regularity of the transfers to all the various persons through whom such stock had passed. Indeed, from the manner in which stock passes from man to man, from the union of stocks bought of different persons under the same name, and the impossibility of distinguishing what was regularly transferred from what was not, it is impossible to trace the title of stock as you can that of an estate. You cannot look further, nor is it the practice ever to attempt to look further than the bank books for the title of the person who proposes to transfer to you."

In the case of *Matter of Bahia & San Francisco R. Co.* (L. R. 3 Q. B. 584 [1867, 1868]) it was held that the *bona fide* purchaser for value of new certificates issued in place of certificates which had been presented to the corporation for transfer with forged indorsements, was entitled to recover damages against the corporation. However, the various judges composing the court repeatedly stated that the corporation was estopped to deny the title of the purchaser of the new certificates issued by it, and it is by no means clear, therefore, that the purchaser's *only* remedy was a suit for damages. Had the court been of that opinion, it would have been more proper to base its decision on a misrepresentation by the corporation to the purchaser's damage rather than upon an estoppel to deny the·purchaser's title, which implies that the purchaser possesses and may retain title to the certificates held by him. In *Simm v. Anglo-American Telegraph Co.* (L. R. 5 Q. B. D. 188, 192) LINDLEY, J., cites the *Bahia Case* (*supra*) as authority for the proposition that the *bona fide* purchaser of a new certificate procures a " good title by estoppel." The action, however, was for damages, and there could, therefore, be no decision on the right to retain the new stock.

There are a number of cases in this country which squarely hold that an innocent purchaser of a stock certificate is protected in

his possession, regardless of any circumstances or events antedating the issuance of the certificate, on the theory that he need not look back of the last registry on the corporate books. *Mandlebaum* v. *North American Min. Co.* (4 Mich. 465), where the corporation was held estopped to. deny that the purchaser of a new certificate was a stockholder, the court expressly refusing to determine the rights of the owner of the stolen stock; *Weniger* v. *Success Min. Co.* (227 Fed. 548), where the purchaser of a new certificate was recognized as a stockholder, although the sale of the original stock was void; *Kimball* v. *Success Min. Co.* (38 Utah, 78), where the facts were the same as those in *Weniger* v. *Success Min. Co. (supra)*. (Cf. *Lowry* v. *Commercial & Farmers' Bank*, Taney, 310; Fed. Cas. No. 8581, pp. 1040, 1047, and *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616.)

In the *Holbrook Case (supra)* our Court of Appeals said (at pp. 621, 622): " It cannot now be denied, that if a corporation having power to issue stock certificates does in fact issue such a certificate, in which it affirms that a designated person is entitled to a certain number of shares of stock, it thereby holds out to persons who may deal in good faith with the person named in the certificate, that he is an owner and has capacity to transfer the shares. This proposition does not rest on any view of the negotiability of stock but on general principles appertaining to the law of estoppel. * * *   When the defendant issued its certificates to William T. Riggs, it affirmed to all persons who might deal with him, that he owned a certain portion of its capital stock and had full power to transfer it. Any purchaser has a right to rely upon this statement, and to claim the benefit of an estoppel in its favor. The correctness of this view can be readily perceived, by supposing that an inquiry had been made at the office of the company as to the ownership of Riggs, and an answer had been given containing the same expressions as are found in the certificate — could not a purchaser have acted with safety upon such a statement? The certificate itself must be regarded as a continuing affirmation of the ownership of Riggs and his power over the stock until it is withdrawn in some manner recognized by law." The plaintiff did not seek there to be adjudged a stockholder, but demanded damages for defendant's refusal to transfer on its books the shares for which he held certificates. The fact that the theory of plaintiff's recovery was not that he suffered damage by reason of misrepresentations, but that defendant's refusal to transfer the stock was wrongful, indicates that he had a right to such transfer and could, had he so desired, have compelled the corporation to recognize him as a stockholder.

In *American Exchange National Bank* v. *Woodlawn Cemetery* (120 App. Div. 119) the Appellate Division, first department, said (at p. 130): " If this had been merely a fraudulent issue, and not

an over issue of certificates, to a party not entitled thereto, made by an officer or agent authorized to issue certificates to a party entitled thereto, and the third party had taken the same by purchase or in pledge innocently and without negligence, the defendant would have been obliged, upon *principles of estoppel, to recognize them as valid and issue genuine stock therefor, or admit the purchaser or pledgee to all the rights of certificate holders.*" (Italics mine.)

That case was reversed by the Court of Appeals (194 N. Y. 116), but only on the ground that the law governing stock certificates could not be extended to certificates of a membership corporation. The court said (at p. 126): " While they [stock certificates in business corporations] are neither in form, or character, negotiable paper, it is because they approximate to it, as well as because they have become the basis of commercial transactions and are sold in open market, the same as other securities, that they are accorded a negotiability like to that of commercial paper. The nature and extent of the dealings in them, in which they are passed from hand to hand like negotiable paper and in so many ways enter into the basis of credit, have influenced courts to accord to them the character of negotiability in order to meet a commercial need of the day."

While there is no abundance of authority holding squarely that the purchasers of new certificates under circumstances such as those here presented, are protected in their possession, it is significant that able counsel for the plaintiff has been unable to find decisions to the contrary, with the exception of *Wells* v. *Smith* (7 Abb. Pr. 261), a decision at Special Term, of doubtful weight. *Johnston* v. *Renton* (L. R. 9 Eq. 181), cited by plaintiff, involved the rights of one to whom the new certificate was issued and not of a purchaser of a certificate already issued. That case is, therefore, clearly distinguishable.

The definite tendency of our law to extend to stock certificates many of the attributes of negotiable instruments (cf. *American Exchange National Bank* v. *Woodlawn Cemetery*, 194 N. Y. 116) culminated in 1913 in the enactment of article 6 of the Personal Property Law, which confers negotiability upon stock certificates of domestic corporations and of corporations organized in States having similar legislation. We find in this recognition by the Legislature of business usages and the needs of commerce, a declaration of the proper approach to the problem at hand. A rule which would require the purchaser of a stock certificate issued and authenticated by a responsible corporation, to look back of the last registry, and, so to speak, " to search the title," a procedure which might well involve the examination of countless intermediate

transfers, especially where certificates have been split up into smaller units, would be· inevitably calculated to work havoc with the established practice and custom of the business community in this great commercial center.    Transactions in stocks, which form so vital a part of modern business life, could not be conducted with the facility, dispatch and security which now characterize them and which are so indispensable to the proper and full development of trade and commerce.    A right of action in damages, involving as it does litigation, lawyers' fees, an unliquidated and problematical recovery, and, worst of all, the familiar " law's delays," would hardly furnish a satisfactory substitute for the stock purchased.    The legislative policy of fostering trade and commerce, exemplified in the extension of negotiability to stock certificates, requires the adoption of the rule that a *bona fide* purchaser of a stock certificate is entitled to recognition as a stockholder regardless of the chain of events which may have led up to the issuance of his certificate, provided only that the certificate was duly issued by proper officers of the corporation in the scope of their employment.

The character and extent of plaintiff's rights as against the Hercules Powder Company, Inc., and the New York Trust Company, whether to damages or to stock, or to neither, it is unnecessary to determine at this time.    It may be that the trial and appellate courts will follow the Massachusetts rule and direct the corporation to recognize plaintiff as a stockholder and issue certificates to him, even though it is estopped to repudiate those held by Laird, Bissell & Meeds and others similarly situated.    It is equally unnecessary to decide upon the proper disposition to be made where such recognition of two sets of stockholders will result in an overissue of stock, in which event one may be entitled to stock and the other to damages.    (Cf. *N. Y. & N. H. R. R. Co.* v. *Schuyler, supra; Moores* v. *Citizens' National Bank of Piqua, supra; Matter of Bahia & San Francisco R. Co., supra;* 4 Thomp. Corp. [2d ed.] §§ 3551 *et seq.*)    There is no possibility here ·of an issue of stock in excess of the authorized capitalization, since only 114,241 shares of preferred stock are issued and outstanding, out of a total authorized capitalization of 200,000 preferred shares.    The only relief demanded on this motion is that the defendants Hercules Powder Company, Inc., and the New York Trust Company be restrained from transferring the stolen shares or any issued in their place.    The stolen certificates have, however, already been transferred, and the ones issued in their stead belong to those holding them as *bona fide* purchasers for value, whatever plaintiff's rights may be as against the corporation and its transfer agent, which the trial alone can determine.

For the reasons indicated, the motion for a temporary injunction is denied.