### JELLENIK *v.* HURON COPPER MINING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF MICHIGAN.

No. 100.   Argued and Submitted January 16, 1900.—Decided March 12, 1900.

A suit was brought in the Circuit Court of the United States for the Western District of Michigan by parties citizens of other States than Michigan against a Michigan mining corporation and certain individual defendants holding shares of stock in that corporation and being citizens residing in Massachusetts.   The plaintiffs claimed that they were the real owners of certain shares of stock of the corporation the certificates of which were held by the Massachusetts defendants, and sought a decree removing the cloud upon their title to such shares and adjudging that they were entitled to them.   *Held,*

1. That the defendants, citizens of Massachusetts, were necessary parties to the suit.
2. That they could be proceeded against in respect of the stock in question in the mode and for the limited purposes indicated in the eighth section of the act of Congress of March 3, 1875, 18 Stat. 470, c. 137, which authorized proceedings by publication against absent defendants in any suit commenced in any Circuit Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought.

1

3. That for the purposes of that act the stock held by the citizens of Massachusetts was to be deemed personal property "within the district" where the suit was brought. The certificates of stock were only evidence of the ownership of the shares, and the interest represented by the shares was held by the Company for the benefit of the true owner. As the habitation or domicil of the Company is and must be in the State that created it, the property represented by its certificates of stock may be deemed to be held by the Company within the State whose creature it is, whenever it is sought by suit to determine who is its real owner.

THIS is an appeal from a decree of the Circuit Court of the United States for the Western-District of Michigan dismissing the bill of the plaintiffs, appellants here, for want of jurisdiction over some of the defendants who were held to be indispensable parties to the suit.

The case made by the bill is as follows: The plaintiffs are stockholders of the Huron Copper Mining Company and citizens of other States than Michigan. The Company is a Michigan corporation, the mines operated by it, all its other property, and its principal offices for business being at Houghton, Michigan, with a branch office at Boston, Massachusetts.

During the transactions complained of in the bill, the Board of Directors of the Company, whose members are the other defendants in this suit, were J. C. Watson, D. L. Demmon, Samuel L. Smith, H. J. Stevens and Johnson Vivian. Watson, Demmon and Stevens (the last-named having since died) were residents of Boston, Watson being President and Demmon Secretary and Treasurer of the Company. They had charge and control of the branch office in Boston. Smith resided at Detroit, Michigan, but was frequently in Boston. Vivian resided at Houghton, Michigan, and was for many years the general manager of the mining operations and the business of the Company at its mining location in Houghton County. Smith and Vivian disclaimed any connection with the alleged fraudulent transactions set forth in the bill, but were put upon their proof by the plaintiffs as to the matters stated therein.

In June, 1890, the Board of Directors made an assessment upon the capital stock of the Company of five dollars per share

payable on July 7th of that year. Notice of the assessment was given to the stockholders, accompanied by the statement that it would be sufficient to pay off all the indebtedness of the Company and leave a cash balance in its treasury of over thirty thousand dollars in addition to the unsold copper and other personal property of the Company.

It was alleged that upon receiving the amount of the assessment, two hundred thousand dollars, the Board of Directors, for the purpose of defrauding the plaintiffs and other stockholders, applied a portion of it to the payment of spurious debts of the Company, and wasted and misapplied another large portion, diverting it from the Treasury of the Company and from the purpose for which it was made, and applying it to the personal uses of the Directors and officers of the Company and their confederates.

On October 25, 1891, the Board of Directors made another assessment upon the stock of the Company of three dollars per share which aggregated one hundred and twenty thousand dollars. This assessment was made without the knowledge of the stockholders and at a time when, as appeared from the statement of the Board, there were sufficient assets of the Company exclusive of its mines and mining property to pay all its legal debts.

The bill charged that the Board of Directors or their representatives had disposed of the stock held by them before the making of the above assessments, and were the holders of none or at least a very small portion, except as they held stock purchased at a sale to be presently referred to as trustees for the plaintiffs and other stockholders, so that they had but a nominal, if any, interest in the Company; that they had so manipulated the assessments as to enable them to speculate in the stock of the Company to the detriment of the stockholders; that they had contracted fraudulent debts by means of false and illegal salaries, allowances and commissions to themselves, by making fraudulent contracts for the Company at extravagant prices, and by borrowing large sums of money for the Company at usurious interest, in which contracts and usurious loans the Directors and their confederates were interested as

contracting parties with the Company; that while acting as Directors and trustees for the stockholders they had betrayed their trust and mismanaged the affairs of the Company for their own profit and advantage; and that for many years they had continued the mining of copper at an apparent loss by reason of such fraudulent practices and mismanagement, and by false statements concealed the same from the stockholders.

On November 1, 1891, the plaintiff Jellenik, acting for himself and as attorney for several of the plaintiff stockholders, applied to Watson and Demmon for leave to examine the books of the Company for the purpose of determining the true state and condition of its affairs, but the demand was refused and for that reason Jellenik refused and advised his clients to refuse to pay the three dollar assessment.

On February 9, 1892, the assessment of three dollars not having been paid, a sale of the stock was made by order of the Directors at the office of the Company in Boston. The sale took place in the private office of the defendant Demmon, the Secretary and Treasurer of the Company. No one was present but the plaintiff Edwards and three other persons, besides the officers and Directors of the Company and their clerks. The Directors or their clerks did all the bidding on the stock, except the bids made for twenty shares, ten of which were purchased for each of the plaintiffs Dickey and Kennedy, trustees. One of the clerks in the office of the Company bid in 2725 shares, and Watson, the President of the Company, took 38,315 shares. The total number of shares sold was 41,060, or 1060 more than the Company possessed, its capital stock being 40,000 shares.

Notwithstanding the assessment of five dollars and the second assessment of three dollars, which were made upon notice to the plaintiffs and other stockholders that they would not only be ample to pay all the indebtedness of the Company but would leave its property free and clear with a large balance in the treasury, and notwithstanding the defendants Watson and Demmon in making the sale of the stock under the three dollar assessment required Dickey and Kennedy, trustees, and other stockholders not in conspiracy with the defendants, to pay the

full amount of the assessment on such sale, Watson and Demmon, the bill charged, either fraudulently sold the stock upon that sale to themselves individually or to their fellow conspirators for a mere pittance, without realizing the assessment thereon, or they realized the money and squandered it and allowed the indebtedness of the Company to be put in judgment in Houghton County, Michigan, with the fraudulent intent through and by that means to buy in and absorb the property and render valueless the stock of the plaintiffs.

In carrying out this scheme, it was alleged that the Directors permitted judgments to be taken against the Company for $180,230.08, of which amount $106,251.84 was a judgment by the defendant Demmon to himself, growing out of illegal transactions with himself as a Director and officer. All the judgments were obtained on the same day, December 30, 1891, by consent between the attorneys appearing for the Company and those for the judgment creditors, Demmon's judgment having been fraudulently procured by using his power and influence to prevent any investigation as to the honesty and legality of his claim.

All of the judgments, except the one procured by Demmon, were assigned to J. B. Sturgis, trustee, of Houghton, Michigan, and on May 7, 1892, the mining property of the Company was sold under the judgments so assigned to Sturgis and a certificate of sale given him by the sheriff of Houghton County. On August 21, 1893, the sheriff of that county, in pursuance of the certificate of sale, executed a sheriff's deed of the property to Sturgis. This deed was duly recorded August 24, 1893, and so far as the records showed, no transfer of title to the property had since been made by Sturgis.

It was alleged that the purpose of making the fraudulent assessment and pretended sale of stock was to exclude the plaintiffs and other stockholders from any right of inquiry into the affairs of the Company; that the purpose of the Directors and officers in causing the property of the Company to be seized and sold by legal process for spurious and fraudulent debts was to extinguish the title of the corporation and of its stockholders to the mining property and to vest the same in

the Directors and their confederates; and that the pretended sale of stock was made in defiance of the protest of the plaintiffs and other stockholders of the Company and upon notice given to the Directors, at the time and place of the sale of the stock, of the fraudulent character of the assessment and of the proposed sale, like notice being given to all purchasers before the making of the sale.

It was stated in the bill that on September 15, 1892, the plaintiffs filed in the court below a bill similar to the one herein. A plea and demurrer were interposed by Watson and upon a hearing had thereon by consent the court held that the bill was defective in its jurisdictional allegations, and declined to proceed further until one was filed having proper allegations and giving it jurisdiction to act.

The present bill contained this paragraph:

"Your orators allege that the shares of stock in the said defendant Company are personal property, and its location is where the Company is incorporated and nowhere else, and that the *locus in quo* of the stock of the defendant Company has been since its incorporation at Houghton County, Michigan, that being its principal office for business and place of incorporation, and this bill is filed to remove any incumbrances, lien or cloud upon the title of your orators in said personal property thus located caused by the fraudulent acts of the defendants, as herein alleged, and for such other and further relief as the nature of the case shall require."

The plaintiffs also averred that they filed their bill in their own behalf because the Company, acting fraudulently through its Board of Directors and controlled particularly by the defendants Watson and Demmon, refused them any information with regard to its affairs or to allow them to see the books or to procure a statement therefrom, and because there was no other mode of relief, as there were no agents of the Company authorized to act for the relief of stockholders except the defendants thus fraudulently conspiring to break down and ruin its stock.

The relief asked was that a receiver be appointed to take possession of all the property and assets of the Company, wind

up its business and make sale of its property; that the Directors and officers, their agents, servants, attorneys and representatives, be restrained and enjoined from in any manner intermeddling with the property and business of the Company, from levying upon, attaching, seizing by execution or selling, or causing to be levied upon, attached, seized by execution or sold, any of the property of the Company, and from prosecuting by any mesne or final process any claim or claims whatever against the Company, and also from cancelling any of the stock of the plaintiffs as set forth and described in the bill, and issuing new stock therefor to the pretended purchaser thereof under the pretended sales for delinquent assessment, and if such cancellation had been attempted by the defendants or any of them and new certificates issued therefor to the defendants or any of them or their confederates, that they be restrained from further transferring the same upon the books of the Company until the final order of the court; that an account might be taken under the direction of the court of the loss occasioned to the Company and its stockholders by means of the covin, breach of trust, mismanagement and neglect of duty and embezzlement of the Directors and their confederates, and of the profits made by the Directors and officers or any of them, and of their confederates or any of them, by means of such covin, deceit, fraud, unlawful confederacy, conspiracy and misappropriation of assets, and that the Directors and officers and every of them be ordered and decreed to pay over to such receiver or the court the entire sum or sums so ascertained; that the court might adjudge and decree that the pretended sale made on the 9th day of February, 1892, was a nullity and passed no title to any of the stock, that Watson and Demmon and their co-Directors and confederates be adjudged to hold the stock which they pretended to acquire at such sale in trust for the plaintiffs and other stockholders of the Company, and that the latter then held respectively in the Company the respective shares of stock which they held prior to the date of the sale, and that by the decree of the court any cloud upon the title of such stock of the plaintiffs might be removed therefrom; and that such other and further relief be granted as the

exigencies of the case might require and to the court should seem meet in the premises.

Such was the case made by the averments in the bill.

*Mr. F. O. Clark* for appellants.

*Mr. T. L. Chadbourne* for appellees.

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

Process was served upon the Huron Copper Mining Company and the other defendants residing in Michigan. Watson, Demmon and Smith, being non-residents, were proceeded against by publication, but they failed to appear. The Company appeared and pleaded to the jurisdiction of the court: 1. That Watson, Demmon and Smith were indispensable parties to the suit, but not inhabitants of the Western District of Michigan, and that no subpoena or process of any kind had been served upon them in the district, nor had they voluntarily appeared and submitted themselves to the jurisdiction of the court. 2. That the stock of the Huron Copper Mining Company belonging to the complainants was not personal property within the district.

The plea was sustained and the bill was dismissed without prejudice to the bringing of such further suit by the complainants as they might be advised.

The Circuit Court correctly held that the defendants Watson, Demmon and Smith were necessary parties to the controversy made by the bill. 82 Fed. Rep. 778. But could they not have been brought before the court in the mode and for the limited purposes indicated in the eighth section of the act of March 3, 1875, entitled " An act to determine the jurisdiction of Circuit Courts of the United States, and to regulate the removal of cause from State courts and for other purposes," which section provides :

" § 8. That when in any suit, commenced in any Circuit Court of the United States, to enforce any legal or equitable

lien upon or claim to, or *to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought,* one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and in case such absent defendant shall not appear, plead, answer or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants, without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district.    And when a part of the said real or personal property against which such proceeding shall be taken shall be within another district, but within the same State, said suit may be brought in either district in said State; *Provided, however,* That any defendant or defendants not actually personally notified as above provided may, at any time within one year after final judgment in any suit mentioned in this section, enter his appearance in said suit in said Circuit Court, and thereupon the said court shall make an order setting aside the judgment therein, and permitting said defendant or defendants to plead therein on payment by him or them of such costs as the court shall deem just; and thereupon said suit shall be proceeded

with to final judgment according to law." 18 Stat. 470, 472, c. 137.

That section was expressly saved from repeal by the fifth section of the act of March 3, 1887, 24 Stat. 552, 555, c. 373, as corrected by section 5 of the act of August 13, 1888, 25 Stat. 433, 436, c. 866, and is in full force. *Mellen* v. *Moline Malleable Iron Works*, 131 U. S. 352.

Prior to the passage of the above act of March 3, 1875, the authority of a Circuit Court of the United States to make an order directing a defendant—who was not an inhabitant of nor found within the district and who did not voluntarily appear—to appear, plead, answer or demur, was restricted to suits in equity brought to enforce legal or equitable liens or claims against real or personal property within the district. Rev. Stat. § 738. But that act extended the authority of the court to a suit brought " to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought."

One of the objects of the present suit was to remove an incumbrance or cloud upon the title to certain shares of the stock of a Michigan corporation. No question is made as to the jurisdiction of the court so far as it rests upon the diverse citizenship of the parties. The plaintiffs alleged that they were the equitable owners of that stock, although the legal title was in certain of the defendants. The relief asked was a decree establishing their rightful title and ownership; and in order that such a decree might be obtained the defendants referred to were ordered to appear, plead, answer or demur; but as they refused to do so, the Circuit Court decided that it could not proceed further. That court was of opinion that " the shares of stock in question are not personal property within the district within the purview of the statute of the United States authorizing the bringing in by publication of notice to nonresident defendants who assert some right or claim to the property which is the subject of suit." 82 Fed. Rep. 778, 779. The proper forum, the court said, for the litigation of the question involved would be in the State of which the defendants were citizens.

The question to be determined on this appeal is, whether the stock in question is personal property within the district in which the suit was brought.   If it is, then the case is embraced by the act of 1875, c. 137, and the Circuit Court erred in dismissing the bill.

By the statutes of Michigan providing for the incorporation of companies for mining, smelting and manufacturing iron, copper, silver, coal and other ores or minerals, it is provided: "The stock of every such corporation shall be deemed personal property, and shall be transferred only on the books of the company in such form as the by-laws direct or as the directors shall prescribe; and such corporation shall at all times have a lien upon the stock of its members for all the debts due from them to such corporation."   By the same statutes it is provided: "It shall be lawful for any corporation formed under the provisions of this act to conduct its mining and manufacturing business in whole or in part at any place or places in the United States (or any foreign country); and any such corporation shall be subject to the laws of this State in regard to corporations, so far as the same shall be applicable to corporations formed under this act."   "It shall be lawful for any company associating under this act to provide in the articles of association for having the business office of such company out of this State, and to hold any meeting of the stockholders or board of directors of such company at such office so provided for; but every such Company having its business office out of this State shall have an office for the transaction of business within this State, to be also designated in such articles of association."   c. 266. "Any share or interest of a stockholder in any bank, insurance company, or any other joint stock company that is or may be incorporated under the authority of, or authorized to be created by any law of this State, may be taken in execution and sold in the following manner: The officer shall leave a copy of the execution certified by him with the clerk, treasurer or cashier of the company, if there be any such officer, and if not, then with any officer or person who has, at the time, the custody of the books and papers of the corporation; and the property shall be considered seized on execution when such copy is left."

"If the shares or interest of the judgment debtor shall have been attached in the suit in which the execution issued, the purchaser shall be entitled to all the dividends which shall have accrued after the levying of the attachment." c. 275. "In attaching real estate or any right or interest in land, it shall not be necessary that the officer should enter upon the land or be within view of it; and in attaching shares of stock, or the interest of a stockholder in any corporation organized under the laws of this State, the levy shall be made in the manner provided by law for the seizure of such property on execution." 1 and 2 Howells' Anno. Stat. Michigan, (1882) §§ 4094, 4097, 4105, 7697, 7698, 7701, 7993; 2 Compiled Laws, Mich. 1897, pp. 2197, 2200; 3 Ib. 3131–2, 3187.

These provisions make it clear that by the law of Michigan the shares of stock in the defendant Company are to be deemed personal property, transferable on the books of the Company; and that the share or interest of a stockholder may be taken in execution or reached by attachment, a copy of the execution or attachment being left by the officer with the clerk, treasurer or cashier of the Company. The authority of the State to establish such regulations in reference to the stock of a corporation organized and existing under its laws cannot be doubted. We need not discuss, in the light of the authorities, whether the shares of stock in the defendant Company may not be accurately described as chattels or choses in action, or property in the nature of choses in action. Chief Justice Shaw, in *Hutchins* v. *State Bank*, 12 Met. 421, 426, said: "If a share in a bank is not a *chose in action*, it is in the nature of a *chose in action*, and what is more to the purpose, it is personal property." The Court of Appeals of New York, speaking by Judge Comstock, held certificates of stock to be simply muniments and evidence of the holder's title to a certain number of shares in the property and franchises of the corporation of which he is a member. *Mechanics Bank* v. *New York & New Haven Railroad*, 3 Kernan, 627; Angell & Ames on Corp. § 560. It is sufficient for this case to say that the State under whose laws the Company came into existence has declared, as it lawfully might, that such stock is to be deemed personal prop-

erty.   That is a rule which the Circuit Court of the United States sitting in Michigan should enforce as part of the law of the State in respect of corporations created by it.   The stock held by the defendants residing outside of Michigan who refused to submit themselves to the jurisdiction of the Circuit Court being regarded as personal property, the act of 1875 must be held to embrace the present case, if the stock in question is " within the district " in which the suit was brought. Whether the stock is in Michigan so as to authorize that State to subject it to taxation as against individual shareholders domiciled in another State, is a question not presented in this case, and we express no opinion upon it.   But we are of opinion that it is within Michigan for the purposes of a suit brought there against the Company — such shareholders being made parties to the suit — to determine whether the stock is rightfully held by them.   The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the Company for the benefit of the true owner.   As the habitation or domicil of the Company is and must be in the State that created it, the property represented by its certificates of stock may be deemed to be held by the Company within the State whose creature it is, whenever it is sought by suit to determine who is its real owner. This principle is not affected by the fact that the defendant is authorized by the laws of Michigan to have an office in another State, at which a book showing the transfers of stock may be kept.

It is suggested that the requirement in the act of 1875 that a copy of the order of publication " shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be," is inapplicable here, because no one in Michigan is alleged in the bill to have *possession* of the shares in question.   But the bill does show that the property represented by the certificates of shares is held by a Michigan corporation which being subject personally to the jurisdiction of the court may be required by a final decree in a suit brought under the act of March 3, 1875 to cancel such

certificates held by persons outside of the State and regard the plaintiffs as the real owners of the property interest represented by them.

It is also contended that the words in the act of 1875, "when a part of said property shall be within another district but within the same State, said suit may be brought in either district in said State," indicate that the act had reference only to tangible personal property capable of being located in more than one district. This would be too narrow an interpretation of the statute. No reason can be suggested why suits involving the title to shares of the stock of a corporation or company should have been excluded from the operation of the statute. On the contrary, the statute contemplated that there might be cases involving the title to personal property not in the actual manual possession of some person; for the direction is that the order of the court be served upon the person or persons in possession or charge of the property, "if any there be." The corporation being brought into court by personal service of process in Michigan, and a copy of the order of court being served upon the defendants charged with wrongfully holding certificates of the stock in question, every interest involved in the issue as to the real ownership of the stock will be represented before the court. We think the Circuit Court may rightfully proceed under the act of 1875, for the purpose of determining such ownership, and that in dismissing the bill error was committed.

*The decree is reversed and the cause is remanded with directions for such further proceedings as are consistent with this opinion and with law.*

MR. JUSTICE BROWN and MR. JUSTICE SHIRAS did not participate in the decision of this case.