HAUGHEY *v.* HAUGHEY.

1. ATTACHMENT—NONRESIDENT DEBTOR—CIRCUIT COURT—JURISDIC-
TION.
   A creditor may proceed by attachment against his nonresident
   debtor in the circuit court for a county in which the latter
   has property subject to attachment (3 Comp. Laws 1929,
   § 14763).

2. CORPORATIONS—COMMON LAW—CERTIFICATES OF STOCK—EVI-
DENCE.
   At common law certificates of stock were generally considered
   merely evidence of the right to participate in the earnings
   of the corporation and not to embody the shares.

3. SAME—COMMON LAW—SITUS OF STOCK.
   At common law the situs of the stock, for purpose of attach-
   ment, was the domicile of the corporation issuing the certifi-
   cate.

4. SAME—STATUTES—ATTACHMENT.
   Provisions of statute relating solely to attachment of shares
   of stock of a domestic corporation are inapplicable to at-
   tachment of shares of a foreign corporation (3 Comp. Laws
   1929, § 14593).

Attachment involving property of nonresidents, see Restatement,
Judgments, § 34.

5. SAME—UNIFORM STOCK TRANSFER ACT—SITUS OF STOCK.

Under the uniform stock transfer act a certificate of shares of stock is the shares of stock and the situs of the shares is the situs of the certificate, and such rule is applicable to all domestic corporations and such foreign corporations as have laws consistent with such act (2 Comp. Laws 1929, § 9520 *et seq.*).

6. SAME—MAINE—TRANSFER OF STOCK—STATUTES.

Under Maine statute setting forth method by which transfer of stock may be effected, the transfer of the certificate of stock by indorsement and delivery is sufficient to transfer title and while the uniform stock transfer act has not been enacted in that State, the provision adopted, evidencing an intent that 'the certificate embody the shares of stock represented thereby, is consistent with provisions relative to transfer of title found in the uniform act (Maine, Rev. Stats. 1930, chap. 56, § 43; 2 Mich. Comp. Laws 1929, § 9520 *et seq.*).

7. SAME—SITUS OF STOCK DETERMINED BY STATE OF INCORPORATION.

Since the State of incorporation has jurisdiction over the share of stock, it alone can determine whether the certificate shall represent the share to the extent of making the situs of the share the jurisdiction where the certificate is found.

8. SAME—NONRESIDENT'S STOCK OF FOREIGN CORPORATION—ATTACHMENT.

Certificate of preferred stock in a Maine corporation authorized to do business in Michigan, which certificate belonged to a nonresident defendant but was in plaintiff's possession, represented the title to the preferred stock in question and was subject to attachment in this State, where the laws of Maine are determined to be consistent with the laws of this State in the matter of situs of shares of stock (Maine, Rev. Stats. 1930, chap. 56, § 43; Mich. Comp. Laws 1929, § 9520 *et seq.*; §§ 14763, 14764).

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 5, 1943. (Docket No. 12, Calendar No. 42,065.) Decided May 18, 1943.

Attachment proceedings by Wilfrid H. Haughey against certificate of stock owned by defendant, Louis J. Haughey. From an order of circuit court

dissolving writ of attachment, plaintiff appeals. Reversed and remanded.

*Roy M. Ludlum,* for plaintiff.

*Hazen J. Hatch,* for defendant.

STARR, J. Plaintiff appeals from an order entered November 12, 1941, dissolving a writ of attachment as to 15 shares of stock of the Consumers Power Company.

The facts in this case are stipulated. Plaintiff, a resident of Battle Creek, Michigan, and defendant, a resident of Dayton, Ohio, are brothers. On August 1, 1941, plaintiff had in his possession stock certificate No. A–13718 issued July 28, 1941, in the name of defendant Louis J. Haughey for 15 shares of preferred stock of the Consumers Power Company, a Maine corporation authorized to transact business in Michigan. On the same date, August 1, 1941, plaintiff began suit against defendant by attachment in the circuit court for Calhoun county. In the affidavit for writ of attachment (3 Comp. Laws 1929, § 14764 [Stat. Ann. § 27.1762]), plaintiff claimed that defendant was indebted to him in the amount of $2,213.33. Acting under the writ, the sheriff took physical possession of a certain check payable to defendant, a certificate of participation issued to defendant, and also the above-described Consumers Power Company stock certificate.

Defendant entered a special appearance and moved to dissolve the attachment. Upon the hearing on such motion defendant waived all objections to the writ of attachment, except his claim that the stock of the Consumers Power Company, a foreign corporation, could not be attached in Michigan. The matter was submitted to the trial court, and on No-

vember 12, 1941, an order was entered dissolving the attachment as to the Consumers Power Company stock. Plaintiff appeals from such order.

The sole question presented on this appeal is whether or not defendant's shares of stock in a Maine corporation, the certificate for which shares was located in Michigan, could be attached in this State.

Plaintiff was entitled to proceed by attachment against defendant debtor in the circuit court for Calhoun county if defendant had "property subject to attachment in said county." (3 Comp. Laws 1929, § 14763 [Stat. Ann. § 27.1761]). Therefore, we must determine whether or not the certificate of stock issued in defendant's name was "property subject to attachment" in that county. In other words, was the certificate of stock located in Michigan the embodiment of the shares, or was it merely evidence of shares located at the domicile of the power company in Maine?

At common law, certificates of stock were generally held to be merely evidence of the right to participate in the earnings of the corporation and not to embody the shares. The situs of the stock, for the purpose of attachment, was held to be the domicile of the corporation issuing the certificate. *Gundry* v. *Reakirt,* 173 Fed. 167; *Jellenik* v. *Huron Copper Mining Co.,* 177 U. S. 1 (20 Sup. Ct. 559, 44 L. Ed. 647); 4 Am. Jur. § 352, p. 778; 10 Fletcher, Cyclopedia, Corporations (Perm. Ed.), § 4760, p. 75; 2 Cook on Corporations (8th Ed.), § 485, p. 1605.

Section 14593, 3 Comp. Laws 1929 (Stat. Ann. § 27.1557), providing for the attachment of the shares of stock of a corporation organized under "any law of this State," would have no application to the present case which involves the attachment of shares of a foreign (Maine) corporation. How-

ever, Michigan has adopted the so-called "uniform stock transfer act" (2 Comp. Laws 1929, § 9520 *et seq.* [Stat. Ann. § 19.331 *et seq.*]).

Section 1 of such act provides that "title to a certificate and *to the shares represented thereby* can be transferred * * * by delivery of the certificate indorsed either in blank or to a specified person." The act provides further:

"SEC. 13. No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy. * * *

"SEC. 14. A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof as is allowed at law or in equity. * * *

SEC. 22. In this act unless the context or subject matter otherwise requires,

" 'Certificate' means a certificate of stock in a corporation organized under the laws of this State or of another State *whose laws are consistent with this act.* * * *

" 'Shares' means a share or shares of stock in a corporation organized under the laws of this State or of another State *whose laws are consistent with this act.*"

By the provision of the uniform stock transfer act that "title to a certificate and to the shares represented thereby" can be transferred by indorsement and delivery, it was clearly intended that a stock certificate embody the shares. In other words, the certificate of stock is the shares of stock. The situs of the shares is the situs of the certificate. By its express terms the uniform act applies to a certificate for shares of stock in a Michigan corporation and also to a certificate for shares in a cor-

poration of another State "whose laws are consistent with this act."

The order of the trial court dismissing the attachment as to the stock in question, was based upon the premise that Maine, the corporate domicile of the Consumers Power Company, had not adopted the uniform stock transfer act and, therefore, its laws were not "consistent with" the uniform act of this State. Chapter 56, § 43, p. 871, Rev. Stats. Maine 1930, provides in part:

"Transfer of Shares and Assessment of Stock.
"SEC. 43. Transfer; how made. * * * When the capital of a corporation is divided into shares, and certificates thereof are issued, they may be transferred by indorsement and delivery. *The delivery of a certificate of stock* of a corporation to a *bona fide* purchaser or pledgee for value, together with a written transfer of the same or a written power of attorney to sell, assign, and transfer the same, signed by the owner of the certificate, shall be a sufficient delivery *to transfer the title* against all parties."

Under the above statute the transfer of the certificate of stock by indorsement and delivery would be sufficient to transfer title. By such statute it was clearly intended that the certificate embody the shares of stock represented thereby. Although the uniform stock transfer act apparently had not been adopted in Maine, the above-quoted statutory enactment was of like purport and effected the same result as the corresponding provision of the uniform act. Therefore, we conclude that such Maine statute was "consistent with" the uniform act in force in Michigan.

In the case of *Mills* v. *Jacobs,* 333 Pa. 231 (4 Atl. [2d] 152, 122 A. L. R. 333) plaintiff had obtained a judgment against defendant and sought to attach

one certificate of stock issued in the name of defendant by a Virginia corporation and three certificates issued by Delaware corporations. The sheriff levied upon and took possession of such certificates. In its decision the court said, pp. 233–237:

"The sole question for our determination is whether defendant's interest in shares of Virginia and Delaware corporations  *  *  *  can be the subject of attachment execution in this State.

"The fundamental problem is the existence or nonexistence within the jurisdiction of the thing attached. At common law shares of stock of a corporation, whether foreign or domestic, were not subject to attachment.  *  *  *

"It is clear that foreign shares can be made subject to attachment, if the situs of the stock is within the jurisdiction of the State where the attachment issues. The certificate itself is, of course, within the jurisdiction of the State where it is held. But this does not give that State jurisdiction over the share unless the certificate embodies the share. And since the State of incorporation has jurisdiction over the share, it alone can determine whether the certificate shall represent the share to the extent of making the situs of the share the jurisdiction where the certificate is found.  *  *  *

"By the adoption of the uniform stock transfer act†  *  *  *  Pennsylvania made this method applicable in this State, and has permitted the attachment of shares of foreign corporations where the State of incorporation has by consistent laws consented to such change. The main purpose of the uniform act is to make certificates of stock as far as possible the sole representative of the shares which they represent.  *  *  *  By section 1 (uniform act) a transfer of the certificate is made to operate as a transfer of the shares. For the purposes of transfer of the stock the effect of this provision

---

† See Laws of Pennsylvania, 1911, p. 126.

is thus to make the situs of the stock the place where the certificates are held.   *   *   *

"In Delaware, which has not adopted the uniform stock transfer act, it is expressly provided by statute as follows: 'For all purposes of title,   *   *   * attachment, garnishment,   *   *   *   the situs of the ownership of the capital stock of all corporations existing under the laws of this State   *   *   *   shall be regarded as in this State.' (Revised Code, 1935, chap. 65, § 73). However, Virginia, by its adoption of the uniform stock transfer act,†   *   *   *   has made the certificate representative of the share. Hence, in this case, the certificates of stock in the Delaware corporations are not subject to levy.   *   *   *   The certificate in the Virginia corporation is liable to attachment."

In the case of *Elgart* v. *Mintz*, 123 N. J. Eq. 404 (197 Atl. 747), the court said, p. 407:

"Since the adoption of the uniform stock transfer act * by our legislature the situs of corporate stock, for the purpose of attachment and levy, has followed the certificate and is now where the certificate is found."

American Law Institute's Restatement of Conflict of Laws, § 53, p. 84, provides:

"Shares in a corporation.

"(1) Shares in a corporation are subject to the jurisdiction of the State in which the corporation was incorporated.

"(2) The share certificate is subject to the jurisdiction of the State within whose territory it is.

"(3) To the extent to which the law of the State in which the corporation was incorporated embodies the share in the certificate, the share is subject to

† See Va. Code of 1936, title 34, § 3848(2)–3848(26).—REPORTER.
* See N. J. P. L. 1916, p. 401; N. J. Rev. Stat. 1937, § 14: 8–39. —REPORTER.

the jurisdiction of the State which has jurisdiction over the certificate.''

In *Rand* v. *Hercules Powder Co.,* 129 Misc. 891 (223 N. Y. Supp. 383, 386), the court said:

''The notes of the commissioners on uniform State laws to section 22 of the uniform stock transfer law, which is the prototype of section 183 of the personal property law of this State, indicate that it was their intention that as to foreign corporations the act was to apply only to those organized in a State which had a like law governing the transfers of stock.''

See, also,` *Disconto-Gesellschaft* v. *U. S. Steel Corp.,* 267 U. S. 22 (45 Sup. Ct. 207, 69 L. Ed. 495); *United Cigarette Machine Co., Inc.,* v. *Railway Co.* (C. C. A.), 12 Fed. (2d) 634; *Pennsylvania Co.* v. *United Railways,* 26 Fed. Supp. 379; *Cotnareanu* v. *National City Bank of New York,* 271 N. Y. 619 (3 N. E. [2d] 451).

The rule that a certificate of stock embodies the shares of stock designated therein is in entire accord with modern business practice. Certificates of stock of both domestic and foreign corporations are bought, sold, and treated as embodying the shares of stock designated therein. One of the purposes of the uniform stock transfer act was to make certificates of stock, insofar as possible, the sole representative of the shares which they represent. *Mills* v. *Jacobs, supra; Simpson* v. *Jersey City Contracting Co.,* 165 N. Y. 193 (58 N. E. 896, 55 L. R. A. 796); *Puget Sound National Bank* v. *Mather,* 60 Minn. 362 (62 N. W. 396); 2 Cook on Corporations (8th Ed.), § 485, p. 1608.

We are convinced that, under the Maine statute hereinbefore quoted, the stock certificate issued by the Consumers Power Company embodied title to

the shares of stock designated therein. Such statute is, in effect, substantially the same as, and is "consistent with," section 1 of the uniform stock transfer act adopted in this State.

We conclude that the stock certificate issued by the Consumers Power Company in the name of defendant Louis J. Haughey embodied and represented title to the 15 shares of preferred stock in question. Therefore, the shares so embodied in such stock certificate were property of defendant "subject to attachment" in this State.

The order of the trial court dissolving the writ of attachment as to the Consumers Power Company stock is vacated and set aside. The case is remanded to the circuit court for further proceedings. Plaintiff shall recover costs.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.