THEOFIL E. KRIZANEK and CHARLES W. STEADMAN, Voting Trustees, Appearing Specially by leave of Court. Defendants below, Appellants,

*vs.*

K. McKINLEY SMITH, Plaintiff below, Appellee.

*Supreme Court, On Appeal, April 4, 1952.*

SOUTHERLAND, C. J. and WOLCOTT and TUNNELL, Justices, sitting.

*William E. Taylor, Jr.*, for defendants below, appellants.

*David Snellenberg, II*, and *John Van Brunt, Jr.*, of the firm of Killoran & Van Brunt, for plaintiff below, appellee.

TUNNELL, Justice, delivering the opinion of the court:

Although the merits of the action are not now before us, it is, nevertheless, necessary to understand something of the nature of the whole case in order to dispose of the instant appeal.

The Biggs Boiler Works Company is a Delaware corporation. One-half of all its outstanding common stock is owned by plaintiff, the other half by Theofil E. Krizanek, who, in the capacity of a voting trustee, is one of the defendants. On the 6th day of December, 1950, at Cleveland, Ohio, the plaintiff and Krizanek executed an instrument purporting to be a voting trust agreement, under the terms of which an attempt was made to transfer the voting rights of the said stock to three trustees, namely, the plaintiff, one Charles W. Steadman, and Krizanek. Under the terms of the said agreement any two of the three named trustees would have the power to vote all the stock. The plaintiff is a resident of the State of Connecticut; both Steadman and Krizanek are residents of the State of Ohio.

As the above-mentioned agreement notes, the certificates of stock are not in the possession of the registered owners, but are deposited with the First National Bank of Akron, Ohio, in escrow, in connection with a transaction with the details of which we here have no concern. The shares are registered on the books of the company, and the

certificates stand in the names of plaintiff and Krizanek as individuals, not in the names of the trustees. The agreement of December 6th, 1950, attempts, however, to cause the shares to be considered and treated for all purposes as if they had actually been transferred to the voting trustees, until the termination of the escrow arrangement, at which time, if the certificates are re-delivered to plaintiff and Krizanek, they are then in turn to be actually assigned and delivered to the voting trustees.

In a companion action to this one, where the relief sought was to review an election in which an effort had been made to vote the stock covered by the above-mentioned trust agreement, the Court of Chancery has already found the agreement invalid in so far as it applies to a period of time limited by the nature of that proceeding. *Smith v. Biggs Boiler Works Co., ante p.* 147, 82 *A* 2d 372. In the present action, however, the direct relief sought is to have the agreement permanently set aside. The defendants being outside the court's jurisdiction, an order was entered in the court below on the 7th day of May, 1951, requiring the defendants to appear by the 31st day of May, 1951, and also requiring that the order for appearance be duly published in conformity with the rules of court and the provisions of *Paragraph* 4374, *R.C.* 1935, which apply in cases of substituted service. Having obtained permission to appear specially, the defendants thereupon came into court and moved to vacate the said order for substituted service. Acting Vice Chancellor Layton denied the motion, and from this order of denial the moving defendants have appealed.

The appellants assail the order for service on several grounds, but all of the more serious ones are variations of, or result from, their central theme that the Court of Chancery has no jurisdiction because the nonresident defendants have no property here so as to sustain jurisdiction under the provisions of *Para.* 4374, *R.C.* 1935. The first portion of that statute, which admittedly is the sole basis for the service attempted, is as follows:

"4374. Sec. 8. Orders for Appearance; Upon Failure of Service and Affidavit; Publication of; Upon Default; Decree Pro Confesso; Enforcement by Seizure or Delivery of Property Demanded; Payment Upon Security for Restitution; Proceedings if Security Not Given; Foreign Attachment:—If, after subpoena or other process issued, any defendant therein named shall not appear in obedience to said process and according to the rules of the Court, the Court may, on affidavit that such defendant is out of the State, or cannot be found to be served with process and that there is just ground to believe that he intentionally avoids such service, make an order for his appearance on a certain day and publish such order as the Chancellor shall direct not less than once a week for three consecutive weeks. And if the defendant shall not appear, after such publication, according to such order, the Court may order the plaintiff's bill to be taken pro confesso, and may thereupon issue process to compel the performance either by seizure of the real and personal property of such defendant or part thereof, sufficient to satisfy the plaintiff's demand, or by causing possession of the estate, or effects, demanded by the bill, to be delivered to the plaintiff, or otherwise, as the case requires. And the Court may also order the plaintiff to be paid his demand out of any property so seized, upon his giving approved security, in a sufficient sum, to abide any order of the Court for the restitution thereof upon the defendant's appearing to defend the suit, and paying such costs as the Court shall order. If such security be not given, the property seized, or whereof possession shall be decreed to be delivered, shall remain under the direction of the Court in the hands of a receiver or otherwise, until the defendant's appearance, or until such order shall be made therein as the Court shall think just."

Appellants first adopt this line, that the traditional jurisdiction of Chancery over a *res* within the bounds of the forum has now been displaced by a statutory jurisdiction more restricted in scope. Even the most casual reading of the statute, they say, shows that it contemplates a seizure of property. Before property can be seized, obviously it must be present. These voting trustees, however, admittedly have no stock registered in their names, and, so far as the record shows, no property of any kind in this jurisdiction in their capacity as trustees. It is elementary that they are indispensable parties. Therefore, they conclude, certain indispensable parties not being before the court, it follows that there is no jurisdiction over the cause. In this fashion appel-

lants frankly challenge the soundness of the ruling of Chancellor Josiah O. Wolcott in *Perrine v. Pennroad Corp.*, 19 *Del.Ch.* 368, 168 *A.* 196.

The appellants have misconceived the meaning of *Para.* 4374 and have then further confused the issue by failing to observe the distinction between the first portion of *Para.* 4374, which we quoted above, and the second portion, which we did not quote because it deals with actions for money decrees and is not applicable to such a matter as the one before us.

They have misconceived the meaning of *Para.* 4374 of our *Code* in taking it to be an attempt to define the types of actions which Chancery will entertain against nonresidents. It does no such thing. A preceding *paragraph,* 4367, gives the Court of Chancery "power to hear and decree all matters and causes in equity * * *." *Para.* 4374 simply establishes the mechanics of service upon nonresidents. Nothing in the statute repeals or purports to affect the traditional jurisdiction of the court to deal with the title to or status of property within the same geographical unit as the forum.

Further, appellants have confused actions for money decrees against nonresidents, which are akin to foreign attachments at law, with actions to adjudicate the status of things *in locol fori* as to which the powers of equity are required. The two statutory provisions presently appear in the same numbered paragraph of our Code, to be sure, but they were adopted at different times[1] to answer entirely different purposes. The distinction between them was well illustrated in *Wightman v. San Francisco Bay Toll-Bridge Co.*, 16 *Del.Ch.* 200, 142 *A.* 783. There the relief prayed for was a fair re-distribution of certain stock owned by nonresidents

---

[1] For the first portion of the statute, the one which we are here discussing, see references in *Hall's Digest of* 1829, under *"Courts,"* IV. The second portion, the basis for money decrees, first appears in *Vol. 35, Laws of Delaware, Chap.* 217, and *Vol. 36, Laws of Delaware, Chap.* 268.

in a domestic corporation. Complainant made the same mistake as these appellants and acted upon it by preliminarily attaching all the stock standing on the books in the name of the defendants. Upon application of the defendants, the Chancellor dissolved the order of sequestration, still allowing complainants, however, to go forward to adjudicate the status of the *res* under the authority of that language of our *Para.* 4374 which applies to the matter before us.

■■ Appellants seek to inject into the first portion of *Para.* 4374 of our *Code* the proviso that jurisdiction is not entertainable until the court first establishes that there is property *of the defendants* in the jurisdiction, and the words so injected are at the same time emphasized. They, therefore, choose to look upon the agreement of December 6, 1950, merely as an ordinary contract executed in Ohio, involving the privately owned personalty of parties living in Connecticut and Ohio, respectively. Hence, they characterize any action by the courts of the State of Delaware in the premises as nothing more than interference in affairs with which they have no concern. They err in failing to concede relevance to *Para.* 2105, *R.C.*1935, which is confirmatory of the common law principle that the situs of corporate stock is the domicile of the corporation. The language of that statute is as follows:

"2105. Sec. 73. Situs of Ownership of Capital Stock:—For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this Chapter or otherwise, shall be regarded as in this State."

Even if we were free to adopt the view of appellants, and were otherwise disposed to do it, we should regret its paralyzing consequences. As Chancellor Josiah Wolcott observed in *Perrine v. Pennroad Corp., supra:*

"But it has never been held that a court is powerless to bring nonresidents before it by constructive service unattended by seizure, if the suit is one wherein the relief sought relates to the status, title

or ownership of property actually located within its jurisdiction. This principle is recognized in *Cantor v. Sachs, et al., supra,* [18 *Del. Ch.* 359, 162 *A.* 73], and is too well settled to call for extended discussion. If such were not so, then a variety of suits which courts of equity repeatedly take jurisdiction of could never be entertained. Bills for the removal of clouds upon title, for the foreclosure of mortgages, for the establishment of trusts, and the like, have long been recognized as properly tenable in equity to the point of a final decree when the property which is the subject matter of their controversy is located within the jurisdiction and when non-resident defendants who are concerned therein have been brought before the court by constructive service only, * * *." 19 *Del. Ch.* 368, 168 *A.* 201.

Moreover, the State of Delaware has a statute requiring certificates to be deposited with a voting trustee or trustees, without which deposit or transfer the trust itself is invalid. *Para.* 2050, *Sec.* 18, *R.C.*1935. Thus, if this contention of the appellants were to prevail, the anomaly would appear that while the state would have jurisdiction to pass upon the validity of a trust if this particular requirement for validity were met, it would, nevertheless, be helpless to cope with the situation if the defendants, in addition to any other violations they had in mind, would take the added precaution of ignoring *Para.* 2050.

What agency can more reasonably supervise the voting rights in stock, and hence protect the elections of the directors who control a corporation, than the state which created the corporation? Any other conclusion would appear to be awkward indeed, in that in order to set aside an invalid voting trust in any corporation where the stock was widely dispersed, multiple litigation might be necessary in very many states, whereas in the state of the corporation's domicile the matter could be settled at a single stroke. Until the statutes of this state should so order in unmistakable language, we should be most reluctant to come to any conclusion which would put litigants and courts alike to such a burden. We take the conclusions reached in *Jellenik v. Huron Copper Mining Co.,* 177 *U.S.* 1, 20 *S.Ct.* 559, 44 *L.Ed.* 647, to be an indication of what a state has the power to do in bringing nonresidents into court to settle the title or status of stock in

corporations created by that state, and we have no doubt whatever as to the soundness of *Perrine v. Pennroad Corp., supra,* and *Wightman v. San Francisco Bay Toll-Bridge Co., supra,* as indications of what our particular state has done.

The appellants next seek to distinguish the *Perrine* case, *supra,* from the one *sub judice,* because there the certificate was in the name of the voting trustees, while in our case it was not. The appellants' comment is accurate, but the distinction is without force. The reasoning of the learned Chancellor was unquestionably based upon the fact that the *res* was in Delaware, for the cause concerned the validity of a voting trust over stock in a Delaware corporation, and it could have no more than incidental interest in whose name the stock was registered.

But, as we previously noted, the appellants say that there is still another requirement of jurisdiction under *Para.* 4374. That is, they say, there is no jurisdiction unless the defendants' property not only is in the state, but is actually seized. This argument is simply an extension of their original errors. The statute, having laid down the requirements for service upon nonresidents so as to obtain a valid decree, then goes on to specify what may be done for the enforcement thereof. To that end it directs that after a decree is taken, even *pro confesso,* any property of defendant may be seized and disposed of in aid of the decree. But obtaining a decree and enforcing it are two wholly different matters. We do not have before us here any question of enforcement. This phase of the problem, therefore, is also concluded by *Perrine v. Pennroad Corp., supra.*

Appellants next declare. that even if the established Delaware view, which the foregoing portions of this opinion have attempted to re-state, was at one time sound, it is not here applicable, because of the Uniform Stock Transfer Act, *Chap.* 159, *Vol.* 45, *Laws of Delaware,* which was in force during the time to which this suit relates. The contention is that this act, requiring, as it did, that stock could not be

transferred except by delivery of the certificate, and that no attachment of stock could be made until the certificate was either seized, surrendered, or its transfer enjoined, amounted to a repeal for all purposes of *Para.* 2105 of our *Code*, which we quoted above in this opinion, and which theretofore had fixed the situs of the stock of domestic corporations as in this state for all purposes except taxation. In this phase of their argument, therefore, appellants challenge the soundness of Chancellor Daniel F. Wolcott's decision in *Hodson v. Hodson, ante p.* 72, 80 *A.* 2d 180.

The appellants' insistence on total repeal directs attention to the nature of their error. *Para.* 2105 of our *Code* was adopted in 1899,[2] but the Uniform Stock Transfer Act was not enacted until 1945. As we had occasion to observe as recently as March 17th[3] of the current year, in our state it is clear that an act of the Legislature does not repeal provisions of pre-existing law to any extent beyond what is expressly stated in or necessarily implied by the language of the later statute. Here there is no basis whatever for a claim of repeal, either express or implied. From ceding, for the specific purposes of transfer or attachment, the situs of stock to the place where the certificate may be, it by no means results that the situs is so ceded for all purposes.

A careful study of the provisions of the Uniform Stock Transfer Act will show that its purpose, as stated in *Hodson v. Hodson, supra,* was to cause certificates of stock to possess certain characteristics of negotiable paper. This was a step in aid of commerce, in order to conform the law to mercantile usage. There is nothing novel about having the situs of stock in one jurisdiction for one purpose and in another for another purpose. *Fletcher, Cyclopedia of Corporations, (Perm. Ed.) Vol.* 11, *Sec.* 5101. Nor can there be any doubt that the state of domicile is the one which has the right to fix the situs of the stock in other jurisdictions for such purposes and to such an extent as it desires.

[2] *Vol.* 21, *Laws of Delaware, Chap.* 273, *Sec.* 128.
[3] *du Pont v. du Pont,* 7 *Terry* (46 *Del.*) 592, 87 *A.* 2nd 394.

*Jellenik v. Huron Copper Mining Co., supra.* The spirit of the Uniform Stock Transfer Act in this particular, as we view it, is thus in harmony with the expression of the editors of the *Restatement, Conflict of Laws,* § 53, where they said:

"(3) To the extent to which the law of the state in which the corporation was incorporated embodies the share in the certificate, the share is subject to the jurisdiction of the state which has jurisdiction over the certificate."

To the full "extent" necessary to carry out the legislative intent of the Uniform Act, therefore, we recognize that the situs of the stock has been transferred. We are not here faced with any question of the rights of innocent third parties who are purchasers or pledgees for value without notice. All the Court of Chancery is asked to do is to pass upon the validity of a purported assignment of the voting rights in stock to certain agents of the owners of the stock. If the assignment is found invalid, a decree is to be entered declaring that the voting rights are actually in the owners of the stock. For such a purpose, therefore, there has been no change in the old law.

At this juncture appellants inject an argument based on a rule of statutory construction. In 1951 the General Assembly repealed *Sec.* 16*M* and amended *Sec.* 16*X* of the Uniform Stock Transfer Act. In its amended form *Sec.* 16*X* now reads:

"Sec. 16X. Inconsistent Legislation Repealed:—All statutes or parts of statutes of this State and all other provisions of this Chapter that are inconsistent with said Sec. 16A to 16X, both inclusive, are hereby repealed to the extent of such inconsistenecy only."

Appellants contend that this amended section shows, (1), that there is or may be inconsistency between the Uniform Act and *Para.* 4374 of the *Code,* and (2), that *Para.* 2105 is not one of those sections saved from repeal by amended 16*X*. Hence, appellants argue, under the rule of *expressio unius est exclusio alterius Para.* 2105 is repealed.

We have already supplied the answer. While the Uni-

form Act was inconsistent with *Para.* 2105 in respect to the situs in cases of transfer or attachment, and repealed it to the extent that it applied to those cases, it was in no way inconsistent with 2105, and effected no repeal of it, in such a case as the one before us.

■ Finally, the appellants renew in a somewhat modified form their original claim that there must be a seizure of assets to give jurisdiction. Because of the Uniform Stock Transfer Act, they say, in such a case as this one, where the stock certificates are in Ohio, it is perfectly clear that even if the court should enter a decree, it would be powerless to enforce it. Obviously, to attach them under the Uniform Act,[4] where the certificates have not been surrendered, they must be seized or their transfer enjoined. Our courts could seize no stock in Ohio, nor could they adequately enforce an injunction there. Hence, the appellants argue, the lower court should not be permitted to proceed where it is perfectly apparent that a decree in plaintiff's favor will be ineffectual.

Again the appellants are confusing jurisdiction to enter a decree with the mechanics of enforcing it after it is entered. It would indeed be a departure from the established order if courts were first constrained to determine whether a judgment would be collectible or a decree enforceable before entertaining an action. True, if plaintiff should prevail a decree entered in Delaware in this action might have to be sued upon in the State of Ohio in order to enforce its terms.[5] That, however, is neither our problem nor that of the court below.

In support of the contrary view appellants have cited on their brief six cases which require individual consideration.

---

[4] Prior to the 1951 amendment.

[5] For some of the problems which could arise in the field of enforcement, especially where courts entertain views not entirely in agreement with those expressed in this opinion, see *McQuillen v. Dillon,* (2 *Cir.*) 98 *F. 2d* 726.

*Haughey v. Haughey*, 305 *Mich.* 356, 9 *N.W.*2d 575, 577, was an attempt to attach in the State of Michigan a stock certificate representing shares in a corporation of the State of Maine. It differed from our case, however, in that it was an action to recover a money decree against certain individuals and did not involve, as our case does, the status of property having situs at the forum. Also it involved the validity of an attachment, which, of course, is expressly covered by the terms of the Uniform Act. Thus, where the Supreme Court of Michigan used the broad, sweeping language that the Uniform Stock Transfer Act calls the "situs of the shares" the "situs of the certificate," it seems necessary to apply that language to the type of case then before the court, that is, an attachment proceeding.

The Pennsylvania case of *Mills v. Jacobs*, 333 *Pa.* 231, 4 *A.2d* 152, 122 *A.L.R.* 333, is subject to all the comments made in respect to *Haughey v. Haughey, supra*. In the Pennsylvania case, in fact, a valid money judgment had already been obtained against the defendant personally, and the only question involved had to do with the validity of a levy on stock obtained under a writ of execution.

*Lockhart v. Dickey*, 161 *La.* 282, 108 *So.* 483, was an action by a widow to set aside as fraudulent an arrangement under which her husband, to avoid leaving her the property at his death, had a stock certificate made out to another, who was a nonresident of Louisiana. The wife was a resident of Louisiana, and the husband had died a resident of Louisiana, retaining the certificate in his possession. The point in which we are interested could not have been raised in that case because the stock there was registered in the name of the defendant, and the certificate was not only in Louisiana, but was actually in court. It follows that the remarks in that opinion on which the appellants rely are *dicta*.

The case of *Montfort v. Korte*, (7 *Cir.*) 100 *F.*2d 615, concerned an action in the District Court of the United States for the Southern District of Indiana to set aside a

fraudulent transfer of stock from a bankrupt to his wife. The certificates had been pledged by the wife with a bank in Kentucky as collateral for a loan. The District Court found in favor of the trustee and entered a decree declaring the transfer of the stock to be void. The wife appealed on the ground that the bank was an indispensable party to the decree. The court affirmed on the ground that the bank was not an indispensable party. In affirming it took the view that the situs of the stock, the *res* in controversy, was in Kentucky rather than Indiana, apparently on the assumption that the adoption of the Uniform Stock Transfer Act in Indiana constituted a cession by Indiana of its entire jurisdiction over the shares of stock in an Indiana corporation. It does not appear that any statute of the State of Indiana with respect to the situs of stock was involved. The precise question which we are here considering, viz., the extent to which the statute voluntarily ceded jurisdiction over shares by reason of the adoption of the Uniform Stock Transfer Act, was not considered by the court.

In *Amm v. Amm,* 117 *N.J.Eq.* 185, 175 *A.* 186, the parties were divorced. After the divorce an uncle of the man died a resident of New York, owning a block of stock in a New Jersey corporation. The wife attempted by sequestration to intercept the stock ahead of the administrator of the estate. The New Jersey Court of Chancery held, (1), that the husband had no property in New Jersey in such a situation, because all he had was a right to demand from a New York administrator one-seventh of the net proceeds of the estate after it had been settled, and (2), that sequestration, being a form of attachment, was clearly covered by the Uniform Stock Transfer Act.

The case of *Klein v. Wilson & Co.,* decided in 1924 by the federal District Court of New Jersey, and reported in 7 *F.2d* 769, came up on a petition to appoint a receiver for a New York corporation in the State of New Jersey. In this case Judge Runyon decided that a New York company's stock in a New Jersey corporation is not "property in New Jersey" be-

cause of the Uniform Stock Transfer Act, and, therefore, that he could appoint no receiver. While the factual situation there differed from ours, it is clear that the court came to a conclusion with which we could not agree.

On the other hand, there is ample authority directly supporting the views set out in this opinion, as heretofore expressed by Chancellor Daniel F. Wolcott in *Hodson v. Hodson, supra,* and by the acting Vice Chancellor in this case below. See *Harvey v. Harvey,* (7 *Cir.,*) 290 *F.* 653; *Rogers v. Guaranty Trust Co.,* 288 *U.S.* 123, 53 *S.Ct.* 295, 77 *L.Ed.* 652, 89 *A.L.R.* 720; *McQuillen v. National Cash Register Co.,* (*D.C.Md.,*) 13 *F.Supp.* 53; *affirmed* (4 *Cir.*) 112 *F.2d* 877; and *Sylvania Industrial Corporation v. Lilienfeld's Estate,* (4 *Cir.*) 132 *F.* 2*d* 887, 145, *A.L.R.* 612.

The decree of the Court of Chancery will be affirmed.